GIBLER v. TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, Appellant.

Division Two, April 2, 1907.

1. **TOLL BRIDGE: Liability to Pedestrian.** A company which operates a public toll bridge across the Mississippi river is not a common carrier. It must keep the bridge in a reasonably safe condition for travel, and is liable to a pedestrian for negligence only for a failure to do that. But the ordinary care which it must use is care proportionate to the danger to be apprehended.

2. ————: ————: **Contributory Negligence: Reasonable Care: Question for Jury: Demurrer to Evidence.** A snow less than an inch and a half deep fell on December 8th. The next morning the snow on the street car tracks on the bridge and the wagon driveway was swept off and piled on the sidewalks of the bridge, and this was the condition when plaintiff crossed the bridge on the 10th, except that some of the snow had melted and formed slush, part of which had turned into ice. That evening when plaintiff attempted to walk across, he kept to the driveway from which defendant had partially removed the snow, and walked thereon until it was difficult, if not impossible, for him to proceed further on the driveway because of the blockade of vehicles near the toll-collector's office. He turned towards the sidewalk to avoid a team driven towards him and was then compelled to step on the sidewalk to avoid a buggy driven in his direction. After getting on the side-

walk he made a step or two forward, but on account of the ice and slush accumulated there he slipped and fell, and his leg was broken. The bridge was 4,200 feet long, 3,168 passengers crossed it that day, and after it quit snowing on December 8th eighty men were put to work to remove the snow, and one witness testified that one side of the bridge could be easily cleaned in a half day, yet the men were still at work removing the snow and ice at the time plaintiff was injured, which was two full days after the snow fell. *Held*, that, the effect of the demurrer being to admit as true all material facts shown by the evidence, the question of plaintiff's contributory negligence was one in regard to which reasonable minds might differ, and was therefore properly submitted to the jury, as was also the question of whether the bridge was reasonably safe for persons passing over it.

3. ———: ———: Instruction: Dangerous Obstruction: Ordinary Care. Defendant's charge that an instruction allowed the plaintiff to recover if he stepped upon ice and slush on the sidewalk of the toll bridge, without requiring the jury to first find that such ice and slush formed a dangerous obstruction to pedestrians in passing over said sidewalk, is not well grounded in view of the fact that the instruction told the jury that "if they find from the evidence that the defendant did not exercise ordinary care in so maintaining said sidewalk with said ice and slush thereon and in permitting said ice and slush to be on said sidewalk," etc.

4. INSTRUCTION: General: How Cured. An ambiguous or general term in one instruction may be explained by another instruction, and a partial view may thus be supplemented, provided the whole be consistent and harmonious.

5. ———: Ordinary Care: Definition. An instruction which defines "ordinary care" as applied to the keeper of a toll bridge as "such care as a prudent operator of a toll bridge would exercise" instead of "such care as a person of ordinary prudence would exercise," is not misleading or confusing, as both expressions mean practically the same thing, but it is nevertheless unhappily worded.

6. ———: Personal Injuries: Medical Services: No Evidence. An instruction which authorizes plaintiff to recover in a personal injury case damages "for any expenses necessarily incurred by him for medicines, medical or surgical attention which the jury may believe from the evidence he has incurred by reason of said injuries and directly caused thereby" should not be given if there is no evidence on which to base it. And where the evidence on the subject consists of the testimony

of two physicians, one of whom called on plaintiff once or twice, but did not ·receive any compensation and only stated that he usually charged two dollars a visit, and the other that he merely examined plaintiff for the purpose of testifying as an expert, and no showing was made of plaintiff's liabliity for such services, or the reasonable value thereof, and of plaintiff's testimony that he did not know the amount of the doctors' bills, there is no evidence on which to base the instruction. The instruction as it stands leaves it to the jury to estimate the damages that ought to be allowed, without any evidence to enlighten them, and is therefore error.

Appeal from Audrain Circuit Court.—*Hon. H. W. Johnson,* Judge.

REVERSED AND REMANDED.

*J. E. McKeighan* and *Wm. R. Gentry* for appellant.

(1)   The court erred in overruling the demurrer to the evidence:  (a)   Because the evidence showed that defendant was exercising ordinary care to clean up its bridge and keep it in safe condition. Ordinary care was all that was required of defendant in this connection.  Grigsby v. Chappell, 5 Rich. L. (S. C.) 445. (b)   Because plaintiff's own testimony shows that he was guilty of negligence in selecting the route which he chose to walk upon when he knew of the presence of the ice, slush and snow, and when by stepping back on to the thirty-four foot roadway he would have had a clean path to walk upon. Where two ways are open to walk or drive upon, one safe and the other obviously dangerous to pedestrians or drivers, and the pedestrian or driver selects the obviously dangerous one and is injured, he cannot recover. Cohn v. City of Kansas, 108 Mo. 387; Wheat v. St. Louis, 179 Mo. 572; Ray v. Poplar Bluff, 70 Mo. App. 252.  (2)   The court erred in giving improper instructions at the request of the plaintiff.  (a)   Plaintiff's instruction 1 was defective in that it allowed plaintiff

to recover if he stepped upon ice and slush on the sidewalk on the bridge, without requiring the jury to first find that said ice and slush formed a dangerous obstruction to pedestrians in passing over said sidewalk. Stone v. Hubbardson, 100 Mass. 49; Chase v. Cleveland, 44 Ohio St. 505; Grossenbach v. Milwaukee, 65 Wis. 31; Broburg v. Des Moines, 63 Iowa 523.   (b) Instruction 3 was wrong because it permitted the plaintiff to recover for "expenses necessarily incurred by him for medical or surgical attention," when there was no evidence tending to show that he had incurred any expenses for medical or surgical attention. Nelson v. Railroad, 113 Mo. App. 659; Duke v. Railroad, 99 Mo. 349; Smith v. Railroad, 108 Mo. 243; Robertson v. Railroad, 152 Mo. 382; Waldopfel v. Railroad, 102 Mo. App. 529; Rhodes v. City of Nevada, 47 Mo. App. 499.

*A. R. Taylor, E. E. Rudolph* and *P. H. Cullen* for respondent.

(1)   The court did not commit error in overruling the demurrer to the evidence, for the reason that plaintiff submitted substantial evidence tending to prove his case, which showed a prima-facie right of recovery, and plaintiff was entitled to have the probative force of his evidence determined by the jury. Baird v. Railroad, 146 Mo. 265; Eichorn v. Railroad, 130 Mo. 575; Graney v. Railroad, 140 Mo. 89; Butts v. Bank, 99 Mo. App. 172; Ladd v. Williams, 104 Mo. App. 390; Knapp v. Hanley, 108 Mo. App. 353; Pembroke v. Railroad, 32 Mo. App. 61.   (2)   The question of whether or not plaintiff was guilty of contributory negligence in continuing to use a sidewalk where he was compelled to go, and upon which there was an accumulation of ice and snow, when he might have stepped back on the driveway, which at the time and place was at least equally

as dangerous, because of teams and vehicles hurrying out from the blockade at the toll collector's office, a few rods away, was a question for the jury to decide, especially when it was shown that plaintiff was using every reasonable precaution to prevent being injured. Loewer v. City of Sedalia, 77 Mo. 431; Buesching v. St. Louis Gas Co., 73 Mo. 220; Hite v. Railroad, 130 Mo. 138. (3) The question of plaintiff's right to recover was properly submitted by the court in plaintiff's first instruction. Pembroke v. Railroad, 32 Mo. App. 61; 1 Thompson on Negligence, 317; Reno v. St. Joseph, 169 Mo. 642. However, instruction 4, offered by defendant and given by the court, is upon the very same question, and almost identically expressed, with the further and additional words "that the plaintiff must prove by a preponderance of the evidence that said ice and slush was a dangerous obstruction to pedestrians passing over said walk on said bridge," and the rule can be here applied that if omissions in the instructions given for plaintiff are fully supplied by those given for defendant, the instructions will be regarded as invulnerable. Goetz v. Railroad, 50 Mo. 472; Chambers v. Chester, 172 Mo. 462; Westen v. Mining Co., 105 Mo. App. 708; Kennedy v. Railroad, 103 Mo. App. 5; Baker v. Independence, 106 Mo. App. 507; Liese v. Meyer, 143 Mo. 560. (4) Instruction 2, given by the court, defining the term "ordinary care," as applied to defendant, was correct, and the court did not commit error in giving it. Holden v. Railroad, 177 Mo. 456; Frieck v. Railroad, 75 Mo. 609; King v. Oil Co., 81 Mo. App. 155. (5) The court did not commit error in giving instruction 3, as to the measure of damage, for there was substantial evidence upon which to base each element of damage, including any expenses necessarily incurred by plaintiff for medical and surgical attention, which the jury may believe from the evidence he has incurred by reason of said in-

juries and directly caused thereby.  Gorham v. Railroad, 113 Mo. 421; Hayden v. Parsons, 70 Mo. App. 493; Taylor v. Iron Works, 133 Mo. 349; Mirrielees v. Railroad, 163 Mo. 492.

BURGESS, J.—This is an action for damages for personal injuries alleged to have been sustained by plaintiff by reason of the negligence of defendant in allowing the sidewalk on the bridge known as the Eads Bridge, spanning the Mississippi river at the city of St. Louis, upon which plaintiff was walking as a foot passenger, to remain in a defective and dangerous condition.  The suit was instituted in the circuit court of the city of St. Louis, and the venue changed to Audrain county, where the case was tried on the 1st day of July, 1904, resulting in a verdict and judgment for $5,000 in favor of plaintiff.  Defendant filed motion for a new trial, which was overruled by the court, and defendant appealed.

The petition, after reciting the incorporation of the defendant, and charging that it operated the bridge in question as a public toll bridge, alleges that on the 10th day of December, 1901, plaintiff, having paid the required toll, was lawfully on the bridge, passing from the east to the west side thereof, and that while so doing he stepped on ice and slush on the sidewalk of the bridge, which was used as a place for foot passengers to walk, and that he slipped and fell by reason of said ice and slush, breaking his thigh bone and sustaining other bodily injuries.  It is charged in the petition that the ice and slush, so accumulated upon the sidewalk, constituted a dangerous obstruction to the passage of passengers over said bridge, and that defendant was negligent in allowing the sidewalk to remain in such defective and dangerous condition.  The petition closes with the usual allegations as to the injuries, pain and suffering, loss of time and earnings, and charges

that the plaintiff "has incurred and will incur large expenses for medicines, medical and surgical attention and nursing, to his damage in the sum of ten thousand dollars, for which sum he prays judgment."

The answer consisted of a general denial and a plea of contributory negligence on the part of plaintiff, to which answer plaintiff replied with a general denial.

The evidence on the part of the plaintiff tended to show that on the morning of Monday, December 9, 1901, plaintiff walked across the bridge from the St. Louis side to go to work at his trade as a glazier in East St. Louis, and that as snow had fallen on Sunday, the bridge was in a bad condition for foot passengers, and many people, because of the snow and slush on the sidewalks, were walking across the bridge over the portion commonly used as a wagonway. Plaintiff testified that when he returned to St. Louis the same evening the condition of the bridge sidewalks was no better than in the morning, and that there was from five to eight inches of slush at some places on the walks; that it was higher in some places than in others, as though it had been piled up or swept there. On Tuesday morning plaintiff noticed that the sidewalks were still in the same condition, while the center of the bridge was cleaner and in better condition than the day before. On the evening of said Tuesday plaintiff, accompanied by Gus Weiss, a fellow-workman, started to walk across the bridge from the east side, and seeing the sidewalks unfit to walk on, they walked on the center or roadway of the bridge. When they came within about a hundred yards of the west toll office they saw the roadway blocked with vehicles. A wagon came along and plaintiff got out of its way by stepping on the street car track on the north side of the bridge. Then came a buggy, driven along said street car track, and to get out of its way plaintiff stepped over the guardrail between the sidewalk and

the driveway and placed his foot on the sidewalk, which was a little lower than the driveway. After reaching the sidewalk plaintiff took one or two steps, when his foot slipped on the slush and ice and he fell on his right hip and arm, the fall breaking his thigh bone at the hip joint. The time was about 5 p. m., and was about dusk. Plaintiff knew the condition of the sidewalk at the time, but as there were teams passing on the bridge he took his chances on the sidewalk rather than take chances in crossing the bridge to the south side ahead of the teams. Weiss raised plaintiff up and assisted him into a street car, which carried him to the west end of the bridge. He was taken to the dispensary at St. Louis, and from there home, where he was confined several months, after which he was able to get about on crutches. Plaintiff stated that he could walk a few steps without crutches, but could not stand it long, and used at least one crutch all the time. He said that on account of the injury he had been unable to do any work until about a year before the time of the trial, when he got a job, with the privilege of sitting down, his earnings being from fourteen to fifteen dollars every two weeks. Before the injury he was earning three dollars per day and was in good health. He did not know the exact amount he had paid for liniments and medicines, but thought it was about twenty-five dollars. The amount of the doctor's bill he did not know.

Plaintiff was treated by Dr. Hill, but as he was not progressing fast enough he called in Dr. Ross, who in his testimony stated that he called on plaintiff several weeks after the injury had occurred, and found evidences of fracture of the thigh bone at the hip joint. He only visited the plaintiff once or twice. For such visits he said his general charge was two dollars, but did not say that plaintiff had paid him.

Dr. Frank Ring testified that he examined plain-

tiff's condition with reference to the injury some three weeks before, and found evidence of fracture of the femur bone at the hip joint. He said plaintiff would always suffer pain in using the injured leg, and would never be able to walk without support.

Witness Gus Weiss, testifying for plaintiff, said that he crossed the bridge on Monday morning, December 9, when he found snow and ice on the bridge and sidewalks between four and five inches deep. Some places it was piled up. The snow had been swept from the street car tracks on to the sidewalks, and the pedestrians used the wagon road in crossing the bridge. On the evening of the same day the conditions were no better, nor on the following morning, December 10. His testimony was like that of plaintiff regarding the condition of the bridge and sidewalks and the circumstances preceding and attending the injury, differing slightly in the details.

The testimony adduced by defendant was to the effect that snow fell on December 8 to a depth of one and three-tenth inches; that it quit snowing at 5:20 p. m., same day, and that after it quit snowing defendant's foreman put eighty men, together with carts, to work to clean the snow off of the bridge, piling the snow and slush in piles on the north sidewalk, and they were still at work cleaning it off at the time of the accident (which was two full days after the snow fell), and there were yet many piles left on the north sidewalk to be carted away or thrown over the side of the bridge into the river.

Witness Mochett testified that he was at work sixty or seventy feet east from the place where plaintiff was injured cleaning up dirty little spots; that the mud from the driveway was being piled in piles on the north sidewalk, and the cart was there ready to haul it off; that as a rule the piles were only made from the ticket office to Third street (the west end of

the bridge), and to the east of the ticket office (the place where plaintiff received his injury), whatever was cleaned from the bridge was thrown into the river; that it sometimes took a half day and sometimes a day to clean the snow off, and they could go over one side easily in half a day, throwing the snow into the river. That the walk was rough from being worn.

Witness O'Neil testified that he was at work fifty or sixty feet east of plaintiff, scraping mud; that the piles were composed of snow and mud mixed. Witness saw no snow on the sidewalk that day except the piles of slush and mud; that the sidewalk was nine feet wide and only two or three feet next the guardrail was occupied by any piles of slush and mud; that the piles were composed of mud only so far as witness knew.

Witness Williams testified that in cleaning the bridge they always commenced on south side of driveway next to the guardrail and swept the roadway on to the north sidewalk and piled it all on the north sidewalk. That there were no restrictions as to where passengers should walk. That there were 3,168 fares collected on the bridge December 10, 1906.

At the close of all the evidence, defendant asked for an instruction in the nature of a demurrer to the evidence, which was refused by the court, and defendant duly excepted.

The first inquiry is as to whether the court erred in overruling the demurrer to the evidence.

Although defendant is not a common carrier, its obligation is to keep its bridge in a reasonably safe condition for travel, and it is only liable for negligence in failing to so keep it. The owner of the toll-bridge is not a common carrier, for in general he has no possession or control over the goods passing over it. He is not like a stage-owner or a railroad company. In these cases the passenger surrenders himself to the care and control of the stage-owner or railroad company,

or their agents and servants in charge of the stage or train upon which he is a passenger; but in crossing a toll bridge, the acts and conduct of a passenger are regulated by his own will. In Grigsby v. Chappell, 5 Rich. L. (S. C.) l. c. 445, it is said: "A bridge over a stream is but a continuation of the public highway which the owner, in consideration of certain tolls, undertakes to build and keep in repair. He is more like the owner of a turnpike road, and his liabilities are analogous. His obligation is to keep the bridge in proper condition for the safe passage of passengers. This is his duty, and if he omit it, he must answer for whatever loss others may sustain."

.It is not claimed that the bridge was out of repair; but it appears from the evidence that a snow had fallen, and that next morning the snow on the street car tracks on the bridge was swept off and piled on the sidewalks of the bridge; so that besides the snow which had fallen on the sidewalks there was an accumulation thereon of the snow and slush swept from the street car tracks and driveway, and this was the condition when plaintiff crossed the bridge two days after the snow had fallen, except that some of the snow had melted and formed slush, part of which had turned into ice. When plaintiff started to cross the bridge on the evening he sustained the injury he kept to the driveway, which defendant had partially cleaned, and walked thereon until it was difficult, if not impossible, for him to proceed further on the driveway because of the blockade of vehicles near the toll collector's office. He turned to the right or north side of the bridge to avoid a team driven towards him, and was then compelled to step on the sidewalk to avoid a buggy driven in his direction. After getting on the sidewalk he made a step or two forward thereon when, on account of the ice and slush accumulated there, he slipped and fell, receiving the injuries stated.

The evidence offered by the defendant showed that 3,168 passengers crossed the bridge on the day plaintiff was injured, that the bridge was about 4,200 feet long, and that after it had quit snowing on December 8 defendant put eighty men to work cleaning off the snow. One witness stated that one side of the bridge could be easily cleaned in half a day; yet it would appear that the men were still at work cleaning off the snow and slush and piling it on the sidewalk at the time plaintiff was injured, which was two full days after the snow had fallen.

The effect of the demurrer was to admit as true all material facts shown by the evidence. This being so, did the facts and circumstances in evidence make out a prima-facie case and authorize the submission of it to the jury? It has been said that ''persons, artificial or natural, who construct bridges and receive toll from those who use them are bound to use due care, skill and diligence to keep them in a reasonably safe condition for use by those who have a right to travel upon them. . . . While the owners of such a bridge are not warrantors or insurers, they are bound to exercise ordinary care to keep them in a reasonably safe condition for passage.'' [Elliott on Roads and Streets (2 Ed.), secs. 39, 40.]

While some of the adjudged cases hold that more than ordinary care is required of the owners of toll bridges, because they collect fares from those who use them, the authorities substantially agree that ordinary care is all the law requires, but to constitute ordinary care the care must be proportionate to the danger to be apprehended.

We are of the opinion that the question of plaintiff's contributory negligence, under the evidence as adduced, was one in regard to which reasonable minds might well differ, and was, therefore, properly submitted to the jury (Berry v. Railroad, 124 Mo. 223;

Powers v. Railroad, 202 Mo. 267) as well also as the question as to whether the bridge was reasonably safe for persons passing over it at the time of the accident.

Plaintiff's instructions numbered 1, 2, and 3 are claimed to be erroneous. They are as follows:

"1. If the jury find from the evidence that on the 10th day of December, 1901, the defendant was using and operating the bridge mentioned in the evidence for the purpose of carrying persons for hire over the Mississippi river; and if the jury find from the evidence that on said day the plaintiff was passing over said bridge and that he paid his fare for such passage; and if the jury find from the evidence that on said day there was accumulated on the sidewalk of said bridge provided by said defendant for its foot passengers to walk upon, ice and slush, and that whilst the plaintiff was so walking upon said bridge he stepped upon some ice and slush and was thereby caused to slip and fall and sustain injuries mentioned in the evidence; and if the jury find from the evidence that the defendant did not exercise ordinary care in so maintaining said sidewalk with said ice and slush thereon and in so permitting said ice and slush to be on said sidewalk; and if the jury believe from the evidence that the plaintiff was exercising ordinary care at the time of his injury, then plaintiff is entitled to recover.

"2. The court instructs the jury that by the term 'ordinary care' as applied to the defendant in the instructions, is meant such care as a prudent operator of a toll bridge would exercise under the same or similar circumstances, and as applied to the plaintiff is meant such care as a person of ordinary prudence would use under the same or similar circumstances.

"3. If the jury find for the plaintiff they should assess his damages at such a sum as they may believe from the evidence will be a fair pecuniary compensation to him.

"1st. For any pain of body or mind which the jury may believe from the evidence he has suffered or will hereafter suffer by reason of his injuries and directly caused thereby.

"2d. For any loss of the earnings of his labor and avocation which the jury may believe from the evidence he has sustained or will hereafter sustain by reason of his injuries and directly caused thereby.

"3d. For any expenses necessarily incurred by him for medicines, medical or surgical attention which the jury may believe from the evidence he has incurred by reason of said injuries and directly caused thereby."

Instruction number 1 is assailed upon the ground, as claimed, that it allowed the plaintiff to recover if he stepped upon ice and slush on the sidewalk of the bridge, without requiring the jury to first find that such ice and slush formed a dangerous obstruction to pedestrians in passing over said sidewalk. If this instruction had gone no further than the limit assigned to it by defendant, it would be subject to the objection urged against it, but the instruction goes further, and tells the jury that "if they find from the evidence that the defendant did not exercise ordinary care in so maintaining said sidewalk with said ice and slush thereon, and in so permitting said ice and slush to be on said sidewalk," etc., which shows that the objection is not well grounded. The instruction, as a whole, only required of the defendant the exercise of ordinary care in maintaining its sidewalk free from ice and slush. Besides, this identical point was covered by instruction numbered 1 given at the instance of defendant, and which told the jury that in order to recover, "the plaintiff must prove by a preponderance of the evidence: 1st, that the plaintiff slipped and fell on account of ice or slush that had accumulated on the sidewalk of said bridge; 2d, that the defendant, in allowing

said ice and slush to so accumulate on said sidewalk, was guilty of negligence; 3d, that said ice or slush was a dangerous obstruction to pedestrians passing over said sidewalk on said bridge. And even then, the plaintiff is not entitled to recover if you further find from the evidence that the injuries complained of by plaintiff were in anywise directly due to any want of ordinary care on his part, or that said injuries could have been avoided by the exercise of ordinary care on the part of plaintiff.''

These instructions are not conflicting, but are in perfect harmony with each other. Even conceding (which we by no means do) that plaintiff's instructions only cover part of the case, any omission therein was supplied by those given at defendant's instance. An ambiguous or general term in one instruction may be explained by another instruction, and a partial view may also thus be supplemented, provided the whole be consistent and harmonious. [Goetz v. Railroad, 50 Mo. 472; Chambers v. Chester, 172 Mo. 461; Liese v. Meyer, 143 Mo. 547.]

Plaintiff's instruction numbered 2 is challenged upon the ground that it is misleading in that it leaves the jury to grope in darkness as to what degree of care should be exercised by the defendant; that while it tells the jury that defendant should exercise such care as a prudent operator of a toll bridge would exercise under the same or similar circumstances, it does not throw any light upon the subject as to what degree of care a toll bridge operator does or should exercise, and that it is further defective in its wording and draws an improper distinction between the degree of care incumbent on the plaintiff and that incumbent on the defendant.

It is conceded by defendant that the definition of ordinary care as applied to plaintiff is correctly given, when it is stated that it is such care as a person of

ordinary prudence would use under the same or similar circumstances, but it is insisted that the term "ordinary care" as applied to the defendant was erroneously defined by the court as such care as a prudent operator of a toll bridge would exercise. While the instruction is unhappily worded, in that it uses the words "such care as a prudent operator of a toll bridge would exercise," instead of the words "such care as a person of ordinary prudence would exercise," we do not think it misleading or confusing, as both expressions mean practically the same thing. Therefore, the judgment should not be reversed upon this ground alone.

It is insisted that plaintiff's instruction numbered 3 is erroneous in that it told the jury that plaintiff was entitled to recover damages "for any expenses necessarily incurred by him for medicines, medical or surgical attention which the jury may believe from the evidence he has incurred by reason of said injuries and directly caused thereby," the objection being that there was no evidence upon which to base this part of the instruction.

Upon a careful examination of the record, we have failed to find any evidence which would authorize the giving of such instruction. But two physicians ever said that they called on plaintiff in a professional capacity after his injury. One of them called on him once or twice, but did not state that he received any compensation for his services. His only statement in that regard was that he generally charged two dollars a visit. Nor is there any evidence that plaintiff ever paid him anything for his services. Dr. Ring, the other physician, examined the plaintiff twice merely for the purpose of testifying as an expert in the case, and neither party to the suit asked him about the liability, if any, incurred by plaintiff on account of his services, or the reasonable value thereof; nor did he

make any statement in that regard. Plaintiff, upon this question, testified that he did not know the amount of the doctors' bills. It will be noted that the instruction told the jury that if they found for plaintiff they would allow him "for any expenses necessarily incurred by him for medicines, medical or surgical attention," etc., thus leaving the jury to estimate the damages that ought to be allowed on account of expenses incurred for medical and surgical attention without any evidence to enlighten them or any bases upon which to form such estimate. Damages of this character cannot be allowed except upon proof. [Duke v. Railroad, 99 Mo. 349; Smith v. Railroad, 108 Mo. 243; Morris v. Railroad, 144 Mo. 500; Robertson v. Railroad, 152 Mo. 382.] In Nelson v. Railroad, 113 Mo. App. l. c. 663, it is said: "Proof of the liability paid or incurred is some evidence of the value of the services (Abbitt v. Railroad, 104 Mo. App. 534), but when, as in this case, the evidence fails to show either the amount of the charge or the reasonable value of the services, there is an entire failure of proof, and the jury should not be permitted to speculate in an effort to award full compensation for the actual damages suffered. Nor can it be said that the error was harmless. The verdict greatly exceeded the sum of the actual disbursements made by pla'ntiff. We are unable to know just how much of the excess represents damages of this character, but, presumably, the jury obeyed the instruction and allowed something for them. Under the pleadings and evidence it was error to direct this to be done."

For the error noted the judgment is reversed and the cause remanded. All concur.