ESTLE HAMILTON, Respondent, v. PATTON CREAMERY COMPANY and JOHN E. REED, Appellants, No. 41112—222 S. W. (2d) 713.

Division One, July 11, 1949.

Rehearing Denied, September 12, 1949.

*Clarence O. Woolsey, Harold J. Fisher* and *Allen & Woolsey* for appellants.

528

*Theodore Beezley* for respondent.

530

BRADLEY, C.—Action for damages for personal injuries received by plaintiff in a collision between the motorcycle he was driving and a truck operated by defendant Reed for the defendant Creamery Company. Verdict and judgment went for plaintiff for $10,000.00 and defendants appealed.

The collision occurred April 12, 1947, about 10:30 a. m., a short distance south, according to plaintiff's evidence, of the intersection of Benton Avenue, a north and south street, and Chestnut Street in Springfield, Missouri. Both vehicles were traveling north and Reed intended to turn left on Chestnut. The negligence alleged and submitted by respondent was failure of appellant Reed, driver of the truck, "to run the truck beyond the center of the intersection and pass to the right thereof before turning his vehicle to the left", and failure of Reed "to signal his intention to turn (to the left) by extending his arm at an angle below horizontal so that it could be seen in the rear of his truck". The grounds were submitted in separate instructions, numbers 1 and 2 respectively, and were in effect in the alternative. Appellants denied the charges of negligence and pleaded and submitted contributory negligence on the part of respondent. The jury was told that respondent could not recover if found that he "was attempting to pass the defendants' truck and that the plaintiff had not signaled his intention to pass said truck, or that plaintiff was passing defendants' truck while same was entering or in the intersection and that such act or acts contributed proximately to cause the resulting collision and injuries to plaintiff".

Error is assigned (1) on the refusal of appellants' motion for a directed verdict at the close of the case; (2) on respondent's in-

structions 1 and 3; (3) on the exclusion of appellants' exhibits— 1 and 8; and (4) on an alleged excessive verdict.

The assignment on the refusal of the motion for a directed verdict is based upon two propositions, namely, that the alleged and submitted negligent failure of Reed "to run the truck beyond the center of the intersection", etc., even though established, was not a proximate cause of respondent's injury, and that respondent was guilty of contributory negligence as a matter of law. We rule these in the inverse order.

■ Was respondent guilty of contributory negligence as a matter of law? The motorcycle and the truck were traveling north and appellants contend that without giving any warning respondent was passing, or was attempting to pass, the truck in the intersection when the collision occurred; that respondent testified in a deposition that he was passing the truck and is bound by such evidence. Appellants rely on Sec. 8385(e) R. S. 1939, Mo. RSA Sec. 8385(e). This section makes it unlawful for a vehicle traveling in the same direction of another to pass the other in an intersection; and ■ the section requires a warning to be given by the passing vehicle when it is proper to pass.

Most favorably stated for respondent the facts are these: Shortly prior to the collision respondent, a city policeman, was driving his two-wheel motorcycle east on St. Louis Street; he stopped at Kimbrough, a north and south street, because a red light was against him; while waiting on the west side of Kimbrough for the change of light a northbound car on Kimbrough crossed St. Louis Street at a high rate of speed; when the traffic light changed respondent turned north after the northbound speeding car which was then about a block away. The Benton Avenue viaduct extends north from St. Louis Street where Kimbrough ends, to Tampa Street; Chestnut is the next street north of Tampa. Respondent saw the car he was chasing pass appellants' truck then between Tampa and Chestnut, as we understand; respondent and appellants' truck continued north and were approaching Chestnut Street; respondent came up near the rear of the truck. Respondent testified:

"I followed at the rear of this truck a short distance; pulled about six feet to the left side of the truck to see if traffic was clear, but the front of my motorcycle was not even with the rear of the truck; I pulled to the left to see the car I was following; I was not attempting to pass the truck; the truck made a sudden turn to the left; I saw I couldn't go behind it so I tried to turn with it, but was unable to do so; I applied my foot brakes; the truck struck the motorcycle about its center. The point of impact was in the west traffic lane of Benton and 13 feet south of the south curb line of Chestnut, and 16 feet east of the west curb of Benton (49 feet wide). The truck driver gave no signal before turning to the left." Respondent did

not give an estimate of speed of the truck and the motorcycle at the time the truck turned to the left, but shortly prior respondent had increased his speed to about 50 miles per hour and overtook the truck. Respondent did not give any warning of his presence.

Appellants' evidence was to the effect that appellant Reed, driver of the truck, as he approached Chestnut, gave a proper left turn signal; had his arm extended out while he traveled some 50 feet or more; slowed down for the turn; that respondent, without giving any warning of his approach, drove alongside and west of the truck, in an attempt to pass, at the moment Reed made the left turn. Reed placed the point of impact *in* the intersection and 12 feet north of the south curb of Chestnut and 6 or 7 feet east of the west curb of Benton. Chestnut was 30 feet in width, hence the point of impact, as fixed by Reed, was south of the center line of Chestnut.

Appellants had taken respondent's deposition, and on cross examination at the trial he admitted that in the deposition he was asked and answered as follows: "Q. How far behind the truck were you *when you pulled out to pass it?* A. Well, I couldn't give the answer in feet, but I was a reasonable distance behind it when I pulled out. Q. Did you pull to the west of the center line of Benton *in passing the truck?* A. I did. Q. What occurred then? A. Well, *as I proceeded to pass the truck,* the truck pulled from the lane of traffic across and struck the motorcycle" (italics ours). For respondent, it was shown that in the deposition he was asked and answered as follows: "Q. What was the position of the front wheel of the motorcycle you were riding in relation to the cab of the truck at the time the truck turned to the west (left)? A. Well I was just coming up to the back of the truck when it started to turn. Q. Was the front wheel of your motorcycle even with the back end of the truck—back end of the bed of the truck—at the time you pulled out to the left or to the west? A. I was near, yes." It will be noted that the italicized portions of the first two questions above are mere assumptions. So far as appears, respondent had not, up to this part of the deposition, testified that he had *pulled out* ▮▮▮ *to pass the truck,* etc. And we might say that the part of the deposition offered by respondent is not inconsistent with his evidence at the trial.

Appellants, however, contend that respondent's evidence in the deposition was that he was attempting to pass the truck when it turned to the left and that such evidence was in direct contradiction on that question to his evidence at the trial; that there was no explanation of the contradiction, therefore, respondent is bound "by the judicial admissions contained in his deposition and that they must be taken as true"; that it would be "unjust to allow the plaintiff to recover after he had so clearly and unequivocally sworn himself out of court". Appellants cite: Steele v. Kansas City Southern Ry. Co., 265 Mo. 97, 175 S. W. 177; Goslin v. Kurn et al., 351 Mo. 395, 173 S. W. (2d) 79;

534

Partney v. Agers, 238 Mo. App. 764, 187 S. W. (2d) 743; Ellegood v. Brashears Freight Lines, 236 Mo. App. 971, 162 S. W. (2d) 628; Adelsberger v. Sheehy, 332 Mo. 954, 59 S. W. (2d) 644; Stoll v. First National Bank of Independence, 234 Mo. App. 364, 132 S. W. (2d) 676. And see Siegel v. Missouri-Kansas-Texas R. Co., 342 Mo. 1130, 119 S. W. (2d) 376. We will assume without deciding that respondent's evidence in the deposition was contradictory to his evidence at the trial as appellants contend and rule the point.

Contradictory evidence of the same witness relied on to prove a fact does not warrant submission of such fact in the absence of an explanation or other circumstance tending to show which of the two versions is true. Goslin v. Kurn et al., supra, 173 S. W. (2d) l. c. 86, and cases there cited. Among the cases cited is the Steele case, supra. But the contradictory evidence in the Steele case and the Siegel case was at the same trial; before the same jury. But there was a second Steele case. Steele v. Kansas City Southern Ry. Co., 302 Mo. 207, 257 S. W. 756. In the second Steele case (en banc) it was held that the plaintiff was not bound by his contradictory evidence at the former trial. See also Reeves v. Thompson, 357 Mo. 847, 211 S. W. (2d) 23; Schonlau v. Terminal R. Assn. of St. Louis, 357 Mo. 1108, 212 S. W. (2d) 420. In the Reeves case the plaintiff's evidence at the trial was contradictory to a prior statement, and in the Schonlau case the evidence at the trial was contradictory to evidence given in a deposition. It was held that the plaintiff was not bound by such. The principle that appellants are seeking to apply is not applicable in the situation here. While respondent conceded that he sounded no warning of his presence, he denied that he was attempting to pass the truck and under the facts the question as to whether he was attempting to pass was for the jury.

Appellants say that respondent was guilty of contributory negligence in driving his motorcycle on the wrong (left) side of the street as he approached the intersection. Appellants rely on Sec. 8385(b) R. S. 1939, Mo. RSA Sec. 8385(b), which provides that "all vehicles when in operation shall be kept as close to the right-hand side of the highway as practicable". These cases are cited: Moore v. Fitzpatrick (Mo. App.), 31 S. W. (2d) 590; Smiley v. Kenney (Mo. App.), 228 S. W. 857; Myers v. Nissenbaum (Mo. App.), 6 S. W. (2d) 993. The facts in these cases are quite different from the facts here and appellants so concede. Besides appellants neither pleaded nor submitted the failure of respondent to keep as close to the right hand side, etc. as a ground of contributory negligence, and definitely we could not, in the situation and under the facts here, say that such failure constituted contributory negligence as a matter of law. We rule that the issue on respondent's contributory negligence was for the jury.

■ Was the failure of Reed "to turn his truck beyond the center of the intersection", etc. a proximate cause of respondent's injury? The assignment on respondent's instruction No. 1 is based on the contention that such failure could not have been a proximate cause of respondent's injury, hence we consider these assignments together.

Sec. 8385(f) R. S. 1939, Mo. RSA Sec. 8385(f), provides that "all vehicles approaching an intersection on a highway, with the intention (on the part of the driver) of turning thereat, shall in turning to the . . . ■ left . . . run beyond the center of such intersection, passing to the right thereof, before turning such vehicle toward the left". And Sec. 8385(j) provides that an operator or driver of a motor vehicle "intending to turn his vehicle to the left shall extend his arm at an angle below horizontal so that the same may be seen in the rear of his vehicle, and shall slow down and approach the intersecting highway so that the left side of his vehicle shall be as near as practicable to the center line of the highway along which he is proceeding before turning".

Respondent's instruction No. 1, as appears supra, submitted his case on the alleged failure of Reed to comply with Sec. 8385(f) as to going beyond the center of the intersection, etc. before turning to the left. Appellants argue, as appears, that such failure could not have been a proximate cause of the collision and that therefore evidence of such failure will not support recovery. It will be conceded that, under the facts here, Reed was negligent per se in failing to drive to the right of and beyond the center of the intersection before turning to the left. The statute says that the driver of a vehicle approaching an intersection *with the intention* of turning to the left shall "run beyond the center of such intersection, passing to the right thereof before turning such vehicle toward the left". Admittedly Reed violated this statute. According to respondent, appellant Reed turned to the left before reaching the intersection and without giving the statutory signal of his intention to turn to the left. It was held in Robinson v. Mayer (Mo. App.), 94 S. W. (2d) 1067, that such failure was the proximate cause of the injury there inflicted. There a pedestrian was injured. See also Felber v. Union Electric Light & Power Co. et al., 340 Mo. 201, 100 S. W. (2d) 494. We rule the contention as to proximate cause against appellants, and rule that instruction No. 1 was proper. Appellants' motion for a directed verdict was properly refused.

■ The complaint on respondent's instruction No. 3 is that it authorized recovery for medical and hospital bills without evidence that such were reasonable. Instruction No. 3 was on the measure of damages and after the hypotheses as to recovery for physical injury, pain, etc., the instruction went on to say "together with his medical and hospital bills which he has incurred in an effort to cure himself of his injuries, if any, and assess his damages in such sum as you believe from the evidence will reasonably compensate him for same . . .".

Respondent's items of expenses were: hospital bill, $260.00; Dr. Silsby's bill, $192.00 (not paid); a belt, $10.00; gauze and equipment used at home after leaving hospital estimated at $50.00; two examinations by Dr. Yancey, amount not given. The total, except Dr. Yancey's, is $512.00. There was no evidence that these charges were reasonable.

Appellants cite Murphy v. S. S. Kresge Co. (Mo. App.), 205 S. W. (2d) 253, in support of this assignment. The judgment in that case was reversed and the cause remanded because an instruction on the measure of damages permitted recovery for medical bills without evidence of reasonable value. The ruling in the Murphy case is based on Gibler v. Terminal R. Assn., 203 Mo. 208, 101 S. W.. 37. In the Gibler case the evidence did not show the amount of the medical bill, but that is not the case here. The matter here can be corrected by remittitur (see infra) and the failure to prove that the medical and hospital bills were reasonable will not justify reversal and remand.

█ Appellants complain of the exclusion of exhibits 1 and 8. Exhibit No. 1 is a photograph of Benton Avenue looking north from a point 8½ feet west of the east curbline "where the viaduct straightens out and runs straight north". The photograph was taken April 13, 1948, a year after the collision. The stated purpose of exhibit No. 1 was "to show the general lay of the street from where Benton begins to run straight north at the viaduct up to and beyond the point where this collision occurred". If there was no evidence that the lay of the land at the time the photograph was taken was substantially the same as at the time of the collision, then complaint █ could not be made on the exclusion of the exhibit. Smart v. Kansas City, 91 Mo. App. 586; Davidson v. St. Louis-San Francisco R. Co., 164 Mo. App. 701, 148 S. W. 406; McCormick v. Lowe & Campbell Athletic Goods Co., 235 Mo. App. 612, 144 S. W. (2d) 866. At the time exhibit No. 1 was offered there was no evidence to support submission of the exhibit, and the court's ruling at the time was proper, but subsequently (see infra) there was evidence that the lay of the land when exhibit No. 1 was taken was substantially the same as when the collision occurred. And when this evidence came in, the ruling excluding exhibit No. 1 should have been withdrawn and the exhibit admitted in evidence. Appellants say that exhibit No. 1 was "material and relevant on the question of whether plaintiff maintained a vigilant lookout and would have been of material assistance to the jury in visualizing the approach to the scene of the accident". The evidence was that the weather was clear; that there was no traffic except the respondent's motorcycle, appellants' truck and the pursued car. It is not likely that the jury would or could have visualized the situation any better with the photograph than without it. Sometimes photographs are helpful; sometimes they are not.

Exhibit No. 8 was a scale drawn plat covering the same area as exhibit No. 1. The measurements were made same day (April 13, 1948)

exhibit No. 1 was taken. James L. Robinett, a consulting engineer, made the plat; he testified that the plat was an accurate portrayal of the lay of the land as it was when the plat was made and that this was the same as it was in June, 1947. Robinett placed on the plat three crosslike figures; two of these were in the intersection of Chestnut and Benton, as shown on the plat, and one on the viaduct, as shown on the plat, south of Tampa Street. These crosslike figures were to show the points from which photographs, including exhibit No. 1, were taken. The court interrogated Robinett about the plat as follows: "Q. What are those things (the crosslike figures in the intersection)? A. Those are the points where the camera, where the pictures were taken, and they are indicated by p-1 or p-2, and so forth. Q. Is this (the plat) a drawing or picture? A. This (the plat) is a drawing and these (crosslike figures) are the points where the camera was when the pictures were taken. Q. What pictures? A. The pictures were taken at the time we made the plat. Q. Now are you saying that this is an exact drawing of the streets, curbings of this or do you have some other matters included in here? A. The only other matters that are in there Judge—of course the sidewalks are in there. Q. But those two things (crosslike figures)—what are those? A. They are points which we were asked to indicate on the plat. Q. This is not a true drawing, then, is it, of these streets, Chestnut and Benton? A. Yes, sir, it is a true drawing. Q. And you mean to tell me that there are two objects like that (crosslike figures) setting out in the middle of Benton Avenue? A. No, sir. Q. All right. (Counsel for respondent): If the court please, we object to it, as it is not a true replica of the scene there. The court: Number 8 is excluded."

Exhibit No. 8 was improperly excluded, but its exclusion could not have been prejudicial to appellants. There was no dispute as to widths of streets, distances, etc. The evidence which was plain and understandable showed all that the plat shows.

■ Is the verdict excessive? Dr. Don J. Silsby, Jr., respondent's witness, testified that he saw him on day of injury; that he had "a lacerated wound over the top of his right foot and a second wound across the instep extending over the bottom of the same foot"; that he had "a fracture of the second metatarsal in the same foot"; that he had "a lacerated wound of his right knee and multiple abrasions of his right leg, knee, and hip"; that he "cleaned up ■ the wounds and sutured them, put his foot and leg in a cast for his fracture"; that the wounds over the top of the right foot became gangrenous; that it became necessary to do a skin graft which was done 16 days after injury.

Dr. Silsby continued to treat respondent after he returned home; the last treatment before the trial (April 22, 1948) was April 13th. At that time respondent again complained of pain in his back; he had made prior complaints of such; April 13th he complained of a "tingl-

ing sensation in his right shoulder and in the right forearm''; that ''this was accompanied by a numbness of his right mid finger''. On examination Dr. Silsby found that respondent ''had a tenderness over his right spinal muscles along the right sciatic notch and along the course of the sciatic nerve in the thigh of the same side; that respondent complained of pain, particularly on bending forward or backward, or to the left; that it was severe enough that he, respondent, could only bend half as far as ordinarily a normal person would; that straight leg raising produced pain on the right side''. At the time of the trial the wounds on the right foot were healed; the wound that went ''transversely around the inner border of the foot and across the bottom of the foot is tender to pressure such as when walking or standing''.

Dr. D. L. Yancey, an orthopedic surgeon and respondent's witness, examined respondent September 17, 1947, February 18 and April 16, 1948. His evidence is corroborative of Dr. Silsby's as to respondent's injuries, pain, etc. Dr. Yancey gave it as his opinion that respondent had 20% disability ''to the low back''; that respondent ''will have some permanent disability to his right foot; while function of the foot is good and almost normal, he has some painful scars which will probably be tender for quite a long time''.

Dr. James D. Horton, called by appellants, examined respondent March 10 and April 20, 1948. He testified that the fractured metatarsal had a good union; that he X-rayed the back, right knee, right foot; that the lower section of the dorsal spine showed ''a very heavy frame with no evidence of fracture or dislocation or arthritis, and the front and side views of the right knee did not show pathology or injury. The front and side views of the right foot showed what appeared to be a healed fracture in the second right metatarsal bone with no evidence of deformity''; that respondent had a very good posture; that he was able to stoop over and touch the floor with both hands.

Respondent's leg was in a cast for the three weeks he was in the hospital and for about two weeks thereafter; he used a crutch for four weeks after the cast was removed; his salary as city policeman was paid during the 2½ months he was off duty; he worked steadily after returning to duty; he is 33 years old.

In support of the amount of the verdict respondent cites: Johnson v. Terminal R. Assn., 354 Mo. 800, 191 S. W. (2d) 676; Brunk v. Hamilton Brown Shoe Co., 334 Mo. 517, 66 S. W. (2d) 903; Baker v. Chicago, B. & Q. R. Co., 327 Mo. 986, 39 S. W. (2d) 535; Pettyjohn v. Interstate Heating & Pl. Co. (Mo. Sup.), 161 S. W. (2d) 248.

We do not review the cases cited by respondent; such is not necessary. Each case, in excessive verdict assignments, must rest upon its own facts; consideration should be given to the purchasing power of the dollar and regard given to the rule of uniformity. McGarvey v. City of St. Louis, 358 Mo. 940, 218 S. W. (2d) 542, l. c. 547, and cases

there cited.  In the McGarvey case a verdict for $10,000.00 was held excessive in the sum of $2500.00.  The injuries there, we think, are somewhat comparable to those here.  Also, in the present case, as appears, supra, there was no evidence to support allowance by the jury of the $502.00 hospital and medical bill; there was evidence to support the $10.00 for the belt.  We think the present verdict is excessive by $2500.00, and that $502.00 should be eliminated which the jury could have allowed for hospital and medical bills.

If respondent will, in 15 days from the filing of this opinion, file here a remittitur of $3002.00, the judgment for $6998.00 as of date of rendition will be affirmed; otherwise the judgment will be reversed and the cause remanded.  It is so ordered.  *Dalton* and *Van Osdol, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court.  All the judges concur.