Arta Faye HENSON, Plaintiff-Appellant,

v.

TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, a corporation, Defendant-Respondent.

No. 32510.

St. Louis Court of Appeals.

Missouri.

April 18, 1967.

Lester W. Duggan, Jr., Florissant, for appellant.

Robert C. Ely, St. Louis, for respondent.

TOWNSEND, Commissioner.

Action for personal injuries resulting from the alleged negligent construction, maintenance and operation of a toll bridge by defendant. Plaintiff had a nine-man verdict and judgment for $11500. The verdict and judgment were set aside by the trial court and judgment was entered for defendant in accordance with defendant's Motion for a Directed Verdict made at the close of all the evidence.

Defendant maintains and operates a toll bridge across the Mississippi River between St. Louis, Missouri, and East St. Louis, Illinois, familiarly known as Eads Bridge. The lower level or deck of the bridge is devoted to railroad traffic. The upper deck is a vehicular toll highway, 41 feet wide. Near the eastern end of the upper level, over the Illinois shore, the vehicular roadway ends; eastbound traffic is intercepted by a large concrete bulkhead which diverts such traffic to the right to a ramp running down to the bridge approaches. In a similar way westbound traffic comes up a ramp on the other side to the vicinity of the bulkhead near which it adjoins the eastbound traffic area. In front of the bulkhead—to the west—there has been constructed a V-shaped concrete divider, one foot thick and one foot high; each leg of the divider is thirty-seven feet long and the distance between the two legs where they abut the bulkhead is twenty-nine feet.

At about 1:00 A.M., January 22, 1963, plaintiff-appellant and Mrs. Violet Speck left Sheraton-Jefferson Hotel in St. Louis, their place of employment, in Mrs. Speck's car, Mrs. Speck driving, with the intention of visiting a restaurant in East St. Louis. They proceeded to the bridge, paid toll and moved toward the east end. According to plaintiff's testimony, Mrs. Speck drove on the right side of the bridge, "She wasn't driving fast, or she wasn't slow, neither, you know, driving slow." Plaintiff wasn't paying much attention—looking out to the side, the car moved forward in a straight line without changing direction or speed until it struck the V-divider. She did not notice any other cars on the bridge moving in either direction. She stated that there was nothing about Mrs. Speck's operation that indicated to her that Mrs. Speck was not going to make the turn to the right and go down the ramp; there was nothing about her driving that caused plaintiff to say anything about her manner of driving. On previous occasions plaintiff and Mrs. Speck had travelled eastward over Eads Bridge, going past the same bulkhead, making the turn and going down the ramp into Illinois. On this occasion she did not see the concrete divider until the car collided with it and bumped over it. When shown defendant's exhibit 1, a photograph of the

locale of divider and bulkhead, plaintiff testified that it correctly represented the divider, curb, bulkhead and the "Keep to Right" sign as they were on the night of the accident.

That photograph shows that the front of the divider carries alternate diagonal stripes of white and some dark color. It shows also that the much higher bulkhead, approximately thirty-four feet to the rear of the apex of the V-divider, is also painted with alternate diagonal stripes of the same kind. Atop the center of the bulkhead is a sign of apparently greater height than the height of the bulkhead itself; on the sign, in large painted letters, appear the words "Keep To" on one line and the word "Right" directly beneath "Keep To". On top of this sign is a smaller diamond-shaped sign carrying the word "Slow". Directly beneath the right third of the "Keep to Right" sign and apparently affixed to the bulkhead is a sign with a white background; superimposed thereon is an arrow pointing to the right. At a slightly lower level, directly beneath the center of the "Keep to Right" sign and also apparently affixed to the bulkhead is an octagonal plaque carrying numerous objects which have the appearance of glass reflectors. At the extreme right and on the face of the bulkhead is a line of neon tubing terminating in an arrow pointing to the right. Immediately behind the apex of the V-divider on a standard of its own is a pentagonal plaque carrying six reflectors. Of this congeries of objects at the scene, plaintiff remembers seeing only the bulkhead, the divider and the "Keep to Right" sign on the night of the accident. She did not remember going from the bridge to the hospital.

The photographs used by the plaintiff and those used by the defendant as exhibits were taken by the same photographer. The plaintiff's photographs were taken at a date later than those used by defendant. Certain changes in the signs had been made in the interim, but the location of the bulkhead, the divider and the Keep to Right sign, as well as the stripes on divider and bulkhead, are the same in both photographs. According to the photographer's estimate, *plaintiff's* Exhibit D was taken at a distance of sixty-five feet from the apex of the divider. That exhibit depicts with complete clarity the bulkhead, the divider and the "Keep Right" sign. The same witness, testifying concerning *defendant's* Exhibit 3, estimated that that photograph was taken at a distance of 175 feet from the closest point of the divider; the latter exhibit shows plainly the location of the bulkhead with its stripes across the roadway. It also portrays the "Keep to Right" sign, the "Slow" sign, the sign of the arrow, the reflectors and the divider.

The exhibits of each party show two separate lighting fixtures attached to the top of the Keep Right sign with shades directed downward for the plain purpose of illuminating the sign. Likewise the exhibits of each party show the existence of a row of lighting standards on each side of the bridge; these standards are along and just outside the curbing on each side of the roadway. In answer to an interrogatory the defendant stated that the height above the highway deck of the illuminating devices on the standards was between nineteen feet and nineteen feet nine inches. In another answer the defendant stated that the shortest distance between any part of the divider and any part of the standards was 57 feet 6 inches.

None of the exhibits shows any lane markings on the surface of the highway deck at any point.

Mrs. Speck, called by plaintiff, has no recollection of events from the time of taking her car from the garage at the hotel until she regained consciousness in the hospital two weeks after the accident.

Defendant offered no testimony.

Action was originally brought against Mrs. Speck and Terminal. Subsequently in February, 1965, the action against Mrs. Speck was dismissed with prejudice as a result of a settlement between plaintiff and

Mrs. Speck under which plaintiff was paid $5850.

■ The duty resting upon a person in the position of the defendant here was long ago stated by the Supreme Court: "Although defendant is not a common carrier, its obligation is to keep its bridge in a reasonably safe condition for travel, and it is only liable for negligence in failing to so keep it * * * the authorities substantially agree that ordinary care is all the law requires; but to constitute ordinary care the care must be proportionate to the danger to be apprehended * * * such care as a person of ordinary prudence would exercise." Gibler v. Terminal R. R. Ass'n, 203 Mo. 208, 101 S.W. 37, 39, 40, 41. See Sirounian v. Terminal Railroad Ass'n, 236 Mo.App. 938, 160 S.W.2d 451, 453.

Plaintiff's petition charges negligence of defendant in the combination of designated factors, namely, maintenance of the divider as a condition dangerous to persons travelling upon the bridge, the state of disrepair of the travelled portion of the highway deck, the slick and icy condition of the roadway, failure to adequately illuminate the scene and failure to give timely and sufficient warning of the allegedly dangerous conditions existing on the bridge. The references to disrepair and to the icy and slick state of the deck may be dismissed immediately as there was no evidence whatsoever relating to such alleged conditions. That leaves plaintiff's complaint as one of inadequate lighting of, and failure to warn of, a dangerous structure in the roadway, all which plaintiff chose, when framing her verdict-directing instruction, to condense into failure to warn plaintiff adequately of the presence of the dangerous divider.

None of the testimony adduced by plaintiff tended to substantiate her claim of lack of lighting or her claim of failure to provide adequate warning of the obstruction.

■ Plaintiff's other evidence defeats plaintiff's case. As to warning devices: Plaintiff's exhibit D, as above noted, a photograph taken at a distance of sixty-five feet from the apex of the divider, shows clearly the striped divider, the striped bulkhead and the "Keep Right" sign. It can be readily deduced from the photographer's testimony that plaintiff's exhibit B was taken at a distance of more than 175 feet westwardly from the divider; that exhibit again clearly shows the striped bulkhead, topped by the large "Keep Right" sign which in its turn is topped by the diamond-shaped sign carrying the word "Slow" (owing to the gradual drop-off in the floor of the roadway the divider does not show in this photograph). In this exhibit B one of the lighting standards at the right side of the roadway carries a sign reading "Speed limit 15 M.P.H."

■ As to illumination of the locale: Plaintiff's exhibits A, B, C, D, F and H display the type of lighting standards installed on both sides of the roadway; each standard near the top carries an arm extending inward toward the roadway and at the end of each such arm is a floodlight. Plaintiff read into the record interrogatories addressed to the defendant and answers of defendant thereto. The height of the floodlights is established thereby at not less than nineteen feet. The standard nearest the divider is 57 feet 6 inches distant. Plaintiff's exhibit F shows that to the west of the apex of the divider there is a standard and floodlight on each side of the roadway; each such standard and floodlight is a part of a row of standards with floodlights extending across the bridge. In addition plaintiff's exhibit D displays the two lighting fixtures on the Keep Right sign, previously described. As indicated above, plaintiff has produced no evidence that any of the lighting devices was not operative at the time of the accident. We cannot assume that such an elaborate system of illumination—the floodlights, the lights above the Keep Right sign and the directional neon arrow—was not functioning at the time of the accident. The lighting was obviously sufficient to illuminate the divider and to give warning from a

long distance away of the structure erected across the roadway.

We hold that the plaintiff failed to make a submissible case and consequently the action of the trial judge was correct.

The action of the Circuit Court in setting aside the verdict and judgment and in entering judgment for the defendant is affirmed.

PER CURIAM:

The foregoing opinion by TOWNSEND, C., is adopted as the opinion of this Court. Accordingly, the action of the Circuit Court in setting aside the verdict and judgment and in entering judgment for the defendant is affirmed.

ANDERSON, P. J., and RUDDY and WOLFE, JJ., concur.