FRED POWELL, RESPONDENT, v. F. H. SCHOFIELD, APPELLANT.*

In the Springfield Court of Appeals. Opinion filed March 30, 1929.

---

*Corpus Juris-Cyc References: Appeal and Error, 3CJ, section 720, p. 796, n. 81; 4CJ, section 2708, p. 764, n. 80; Damages, 17CJ, section 415, p. 1097, n. 3; Motor Vehicles, 42CJ, section 998, p. 1201, n. 22; section 1101, p. 1263, n. 46; section 1102, p. 1263, n. 48; Trial, 38Cyc, p. 1543, n. 69.

*Joslyn & Boone* for appellant; *W. C. Russell*, of counsel.

*Cope & Tedrick* for respondent.

BAILEY, J.—This is an action for damages incurred in an automobile collision. A trial was had to a jury resulting in a verdict and judgment for plaintiff in the sum of $5250 and defendant has appealed. Error is assigned in overruling the general and special demurrer offered by defendant at the close of plaintiff's testimony. Defendant did not stand on his demurrer but offered evidence in his

defense. Plaintiff is therefore entitled to the benefit of all favorable evidence in the whole case and may use defendant's evidence in support of his own. [Kummenacher Drug Co. v. Chouteau, 296 S. W. 255; Hague v. Threadgill, 236 S. W. 895.] In his second assignment defendant charges error in overruling his instruction in the nature of a demurrer, offered at the close of the whole case. For the purposes of this demurrer it is elementary that plaintiff's evidence is to be taken as true and he is entitled to all reasonable inferences therefrom, while defendant's contrary evidence is to be taken as untrue. [Durbin v. Railroad, 275 S. W. 358, l. c. 360.] The evidence most favorable to plaintiff may be briefly stated as follows: Plaintiff is a brick mason and, in October, 1927, was employed as such in Poplar Bluff, Missouri. At that time he was making his home in the town of Fisk, on U. S. Highway No. 60, ten miles east of Poplar Bluff. This highway is paved with concrete, the slab being eighteen feet in width, with six foot shoulders on either side. The highway has few grades or curves but runs through a more or less swampy, flat country, which fact, under certain conditions, helps to cause a more or less foggy condition of the atmosphere, thereby causing the pavement to become damp.

On the evening of October 20, 1927, at about seven P. M. plaintiff was driving a new Chrysler coupe from Poplar Bluff to Fisk. He had just purchased the coupe on that day, but was familiar with the operation and driving of automobiles, having driven several different makes of cars. At that time a bus of defendant's had stopped on the highway, on the right hand side thereof, headed in the direction plaintiff was going. Plaintiff's testimony indicates that he had not at any time during the trip from Poplar Bluff driven his automobile at a greater rate of speed than thirty miles per hour. As he approached a point on the highway five or six miles east of Poplar Bluff, it was dark and he observed the lights of another automobile approaching him; the lights of the approaching car were of sufficient brilliancy as to almost blind him temporarily and to render it difficult for him to see the road ahead. These lights blinded plaintiff "a good ways" before the car passed him. At that time plaintiff had slowed down his car to about fifteen miles per hour turned on or "flicked" his dimmers but the bright lights of the other car continued to shine; plaintiff proceeded and pulled out to the right as he approached the on-coming car. Immediately after he had passed or was even with the car with the brilliant headlights, he saw the bulk of the bus fifteen or twenty feet ahead of him. Plaintiff immediately applied his brakes and swerved to the left in an effort to miss the bus. The pavement was damp and the weather foggy. He was unable to clear the bus. The right front fender of plaintiff's automobile struck the left rear

end of the bus and plaintiff's car was thrown sideways and ran off the concrete slab into a ditch on the left side of the road and overturned. Plaintiff testified there were no lights whatever on the bus. Defendant's employee admitted that neither the headlights or tail light was burning on the bus but says that he had thrown the switch to turn on the little marker lights on the upper rear corners of the bus, but did not go around to the rear to see whether or not they were lighted. From his testimony, it seems, he was working on the gas line near the motor, which, he says had bursted and that fact caused the stopping of the bus on the highway. The bus had been stopped about twenty-five minutes when the collision occurred. The bus was fully on the pavement and according to plaintiff, was occupying about half the eighteen foot slab. As to the lights on his own car, plaintiff testified on cross-examination as follows:

"They were sufficient to give plenty of light and were burning bright and on pavement like that they will flash out a good piece. I could not say exactly how far they would throw the light, but they would throw it a good piece. They ought to throw the light farther than a hundred feet ahead. Well, I will say from a hundred feet to a hundred fifty feet. They ought to throw it that far ahead on pavement. I never turned the lights off before the collision, I just winked the dimmers. Another car with bright lights was coming meeting me and I winked my dimmers. . . . That light blinded me. When a man is blinded he cannot see any great distance, but he can see anything in front of him a short distance. That light blinded me a good ways before it passed me, but I could not say just how far. I am afraid that I might estimate the distance wrong. I don't know how far the car was from me when I saw it. I don't know how far I was from the bus when I winked my dimmers. When I got to a point where the lights on the car that I met did not blind me I could see the bus. My lights were not shining a hundred fifty feet ahead when I turned the dimmers on. When you turn the dimmers on you cannot see near so well. After I turned my dimmers on it was but a very short time until I struck the bus. I know it could not have been long, but I could not say just how long. I could not tell how many feet I traveled when I could not see because of the light of the approaching car, and I never paid any attention to that. I was watching where I was going. I was driving carefully enough and did not want to get hurt or hurt anyone else. I was going fifteen or twenty miles an hour."

He further testified that the lights "had not plumb blinded me, but it had blinded me until I could not see ahead of me to amount to anything." There was some testimony that a small red light was burning on the right hand side of the bus at the top rear end. There

is no question but that the tail light was not burning and that the bus was standing entirely on the pavement, occupying almost half thereof, at the time of the collision and had been so standing for almost half an hour. There was evidence that the car plaintiff was driving could be stopped, when travelling at the rate of fifteen miles per hour, in eighteen feet on a dry pavement and in about thirty-six feet on wet pavement, as this was.

Defendant contends that plaintiff was guilty of contributory negligence as a matter of law in failing to reduce his speed and bring his car under control after he became blinded by the headlights and turned on his dimmers and reduced the distance at which he could see an object ahead of him. In support of this proposition he cites our highest degree of care statute, applicable to operators of automobiles, and the decisions from a number of sister states. No Missouri cases are cited for the reason, no doubt, that there are none directly in point. We shall briefly refer to some of the authorities cited by defendants. In Lauson v. Fon Du Lac, 123 N. W. (Wis.), 629, it was held that the operator of an automobile who, on a dark and rainy night ran his car without sufficient lights to enable him to see objects ahead, whereby he went into a ditch, was guilty of contributory negligence and not entitled to recover. It was further held that he must so operate his car so as to be able to bring it to a standstill within the distance he could see objects ahead of him. There was no other car blinding the driver in that case. (Decided in 1909.)

In Alberta Day v. Cunningham (Me.), 133 Atl. 855, 47 A. L. R. 1229, one driving an automobile towards a street car standing to discharge passengers was held to be negligent when he drove his car at the rate of thirteen miles per hour with the light of the street car blinding him, and was held liable for injuries to passengers alighting from such street car.

It was decided in Jaquith v. Worden, 132 Pac. 33, 48 L. R. A. (N. S.) 827, that the driver of an automobile on a city street, blinded by the lights of an approaching car, is guilty of negligence in proceeding at all. To the same effect is the case of Hammond v. Morrison, 90 N. J. L. 15, 100 Atl. 154.

In Budrick v. Peterson, 215 Mich. 678, 184 N. W. 493, it was held that the driver of an automobile, if his vision was obscured by the blinding headlights of an approaching car, was under a duty to slacken his speed and have his car under such control that he might stop it immediately, if necessary. So in Hazel v. Motor Bus Company, 310 Ill. 38, 141 N. E. 392, 30 A. L. R. 491, where the driver of an automobile on an eighteen foot pavement was blinded by the lights of an approaching car and switched his own lights on and off as a signal to the driver of the other car, also set his brakes, at which time

he was going at the rate of twenty-five miles per hour, and just as he passed the lights of the other car he crashed into a lumber wagon on the road which he failed to see ahead of him, he was held to be guilty of negligence.

The case of Mathers v. Botsford, 97 So. (Fla.) 282, 32 A. L. R. 881, lays down the rule that, "While it may be negligence for a driver of an automobile to permit the bright lights on his car to obscure or obstruct the vision of a driver of another car on a public highway, yet this does not relieve the driver of the other car of the duty to exercise due care required by the circumstances, and even to stop if that is reasonably required to avoid injury to persons who may lawfully be on the road, but whose presence is not known to the driver because of the blinding light on another vehicle then approaching."

In a dissenting opinion in that case, referring to the foregoing statement of the law in the majority opinion, it is said that, "Reduced to its last analysis in the light of the circumstances of this case, that statement simply means that when a person is driving an automobile which he understands and is able to manage, along a public road beyond a city's limits, at the rate of fifteen miles per hour in the nighttime, and meets another automobile the bright lights from which 'blind' the driver of the first machine, it is the latter's duty to bring it to a standstill; otherwise he will be guilty of negligence rendering him liable in damage resulting from a collision with some object in front.

"In the case at bar the object in front was the plaintiff, who knew that the automobile was approaching from the rear, and either did not step out of the zone of danger, or stepped into it—his own testimony does not make clear.

"The word 'blinded' as used by the witness in the connection in which it was used in this case, referring to the effect upon one's vision of the glaring light from an approaching automobile in the night, does not mean 'total blindness,' but partial deprivation of vision, rendering it difficult to see objects distinctly. Such is the effect of the dazzling or glaring light of an approaching automobile in the nighttime, while objects ahead and in the path of the approaching machine are faintly discernible, objects to one side or the other of the road are more easily seen. But to announce the doctrine that a failure to stop the automobile under such circumstances is *per se* negligence is to write a new regulation and impose a new standard of diligence in the law of the road."

In line with the view expressed in the dissenting opinion, supra, are a number of cases from other jurisdictions. For example, in Devoto v. United Auto Tramp. Company, 128 Wash. 604, 223 Pac. —, the facts were that while driving through a dense fog, defendant's

bus crashed into the rear of a car proceeding or headed on the highway in the same direction. The court said:

"It is urged that there was error in instructing the jury to the effect that it was the duty of the driver of the stage to drive at such a rate of speed as to enable him to stop within the distance disclosed to his view by his own headlights. In view of the evidence in this case we fear the rule laid down is so severe as to be impracticable. One of the respondents testified to the effect that the fog lay in banks or strips—in places not so dense as to interfere with a reasonable view ahead, but proceeding they came into places where the fog was so dense that the white light of the headlights was mirrored back to the driver, and he could see nothing in advance of his automobile. Under such conditions shall a driver stop in the fog bank until the fog clears? If one does so all must do so, or the danger would be thereby increased; and if all stop, how shall anyone reach his destination? It seems to us in reason that traffic must be permitted to move on the highway at all times, but that in driving through a fog bank each driver must do so in a careful and prudent manner, with due regard for the safety of others; and what is careful and prudent under the particular conditions shown will usually be a question for the jury."

In the case of Murphy v. Hawthorne, 244 Pac. 79 (Ore.), 44 A. L. R. 1397, the facts are somewhat similar to the case at bar. Plaintiff was driving his roadster on public highway after dark, at the rate of twenty-five miles per hour on the right hand side of the road with headlights on full strength. A large bus approached going in the opposite direction and plaintiff turned out to the extreme right. The bus kicked up enough dust to obstruct plaintiff's vision. Suddenly and unexpectedly there appeared within plaintiff's range of vision a heavy truck belonging to defendant, which had been parked on the right side of the highway without any light, with which plaintiff collided. It was unlawful for the truck to be parked in that place without lights. Defendant's principle contention was that plaintiff was guilty of contributory negligence as a matter of law in failing to stop his automobile within the range of his vision. The Supreme Court of Oregon held that:

"While there is authority to the contrary, we believe the better reasoned cases support the holding that whether plaintiff failed to exercise due care to avoid the collision was a question of fact for the jury. Wurl v. Watson, 67 Cal. App. 625, 228 Pac. 43; Haynes v. Doxie, supra; Ross v. Hoffman, —Mo. App.—, 269 S. W. 679, distinguishing prior decisions of that court and considering Lauson v. Fon Du Lac, supra, upon which appellant so much relies. [Hatch v. Daniels, 96 Vt. 89, 117 Atl. 105, 22 N. C. C. A. 205; Tutsch v. Omaha Structural Steel Works, 110 Neb. 585, 194 N. W. 731; Ban-

croft v. East Montpelier, 94 Vt. 163, 100 Atl. 39; Berry, Auto (4 Ed.), 873.] No error was committed in denying motions for nonsuit and directed verdict.''

To the same effect are Fleming v. Hartrick, 131 S. E. (W. Va.) 558; Horn v. Los Angeles County, 46 Cal. App. 148, 189 Pac. 462; Haynes v. Doxie, 52 Cal. App. 133, 198 Pac. 39'; Rozycki v. Yantic Produce Co., 99 Conn. 711, 37 A. L. R. 582, 122 Atl. 717; Kindale v. Des Moines, 183 Iowa, 866, 167 N. W. 684; Garfield v. Railroad, 79 Conn. 458, 65 Atl. 598; West v. Marion Co., 188 Pac. (Ore.) 184; City of Providence v. Young, 13 S. W. (2d) 1022.

We have found no Missouri cases in which has arisen the question of the duty of an automobile driver when blinded by the lights of an approaching car while driving on the highway. In the case of Soloman v. Duncan, 194 Mo. App. 517, the facts were that plaintiff, on the night of December 2, 1909, was driving his car on Delmar avenue in the city of St. Louis, and the machine struck a pile of debris near the right hand curb. Plaintiff had been drinking. He was driving his car about eight miles per hour at the time of the accident. He testified that although his car was equipped with strong acetylene gas headlights he could not see more than eight or ten feet ahead on account of the mist and that ordinarily he could have stopped in fifteen feet at the rate he was travelling. The St. Louis Court of Appeals, in a well-reasoned opinion, passing on the question of contributory negligence, reviews the then prevailing decisions of other courts (among them being the Wisconsin case of Lauson v. Fon du Lac, supra), and holds that it is negligence as a matter of law for the operator of an automobile to drive the same at a rate of speed as to make it impossible to stop, with the appliances at hand, within such distance as he could discern an object and such negligence bars a recovery. But in Ross v. Hoffman et al., 269 S. W. 679, by the Kansas City Court of Appeals, a different rule was announced. It appeared that shortly after midnight in July, 1919, plaintiff was driving his automobile, with bright headlights, at the rate of twenty miles per hour on Linwood Boulevard, a public street of Kansas City. It was dark. Suddenly, within fifteen or twenty feet of his car, and directly in front, he saw a pile of lumber and was unable to avoid striking same. The question of contributory negligence was raised and held to be a question for the jury. The court attempts to distinguish its holding from the holding of the Soloman case, supra, on the theory that plaintiff in the latter case had been drinking. However, the court refused to adopt the rule announced in the Soloman case relative to keeping a car under such control that it could be stopped within the distance an object could be seen. The case of Roper v. Greenspon, 198 S. W. 1107, 272 Mo. 288, seems to support the view adopted in the

Ross case. The general rule in this State as to contributory negligence is thus stated: "Before contributory negligence will bar a recovery, it must be of such a nature as to enter into and form the direct, producing and efficient cause of the casualty, absent which the casualty would not have occurred." [Nordmann v. Bakery Company, 298 S. W. 1037, l. c. 1039.]

It is also laid down as a rule and guide that before a court should declare as a matter of law that the injured party was guilty of negligence barring a recovery, "the evidence must be substantially all one way, and not such that reasonable minds might differ with respect thereto." [Weller v. Ry. Co., 164 Mo. 180, l. c. 205, 64 S. W. 141.]

Recurring to the facts in this case, it appears that plaintiff had been driving not to exceed thirty miles per hour but had slowed down to fifteen miles per hour at the time he became "blinded" by the headlights of the oncoming car. He testified he was not "plumb blinded" but could not see ahead to amount to anything. As he came even with the car with the blinding lights and free from the glare thereof he saw suddenly before him, about fifteen or twenty feet ahead, defendant's bus occupying one-half of the paved road, that is to say, it was fully on the slab and directly in front of plaintiff's car on the right-hand side of the pavement. There was no tail light on the truck and, if any light at all, it was on the rear upper part of the bus near the top on the right-hand side. That negligence was shown on the part of defendant can hardly be questioned. The fact that defendant's driver said the gas line broke and he couldn't move the car off the pavement, would make no particular difference. It stood there for twenty-five minutes and no proper or suitable light was burning to warn other users of the highway of its presence. The night was more or less foggy and the pavement wet. Plaintiff applied his brakes instantly and swerved to the left, but hit the bus.

Defendant contends plaintiff should be held to the rule that he should have had his car under such control that at all times he could stop within the distance an object could be seen by him on the highway. We are unable to agree with those cases which lay down a hard and fast rule of that kind. In this day and age there is a continuous stream of traffic on our main highways, day and night. Most of the cars travelling at night carry powerful electric headlights which more or less "blind" the drivers of other cars meeting them. It is a hazard of the road made the more dangerous by unlawful and unnecessarily brilliant lights. Be that as it may, we are dealing with a state of facts which raise a question of great importance to the users of our highways. Should we adopt the rule that the operator of an automobile travelling at night, in the exercise of the highest degree of care, must, as a matter of law, immediately stop his car or have

it under such control that he can stop within the range of his vision, upon becoming blinded by the headlights of an approaching car? That is the rule adopted in many cases and there is much sound reason in favor of it. We think those cases, however, fail to take into consideration the utter impracticability of such a rule. Near any city on our main highways the driver of a car will ordinarily meet an almost unbroken line of cars coming toward him at night. If he attempted to stop for each blinding headlight he would no sooner overcome one "blind spot" than another would appear. He would be compelled to stop and start unceasingly. Such method of operating his car would not necessarily obviate danger. Other drivers following him may likewise be blinded and hit the stopped car from the rear. It seems he would also be required, if he stopped, to drive off the pavement, else he himself might be guilty of negligence in stopping on the pavement. Driving onto the shoulders of paved roads when more or less blinded is obviously dangerous, not only to the driver, but to any pedestrian or other car that might, perchance, be there. It also appears that when two cars meet, each driver may be blinded. Which should stop? If they both stop, which one shall proceed? We use the word "stop" because in most cases the vision of the operator is so impaired by headlights as to become practically *nil* and to comply with the rule under consideration he would be compelled to stop. If the "blinded" driver slows down so that he can stop within a reasonable distance when blinded by headlights, we think he should not ordinarily be declared guilty of contributory negligence as a matter of law.

Many objections to the laying down of a hard and fast rule may occur to the experienced mind. We are convinced that no strict rule of law should, as a matter of common sense under present day conditions, be applied in such cases. Each case should be decided on its own peculiar facts. The speed of the cars, congestion of traffic, condition of the highway, character of the obstruction, together with all the other facts and circumstances are to be considered. There are undoubtedly cases where plaintiff should be declared guilty of contributory negligence as a matter of law in failing to stop or have his car under such control that he can stop within the range of his vision, when blinded by headlights. But ordinarily we think, it should be a question for the jury. The case at bar presented a state of facts which would cause reasonable minds to differ on the question of contributory negligence and defendant's demurrer was therefore properly overruled. [Jackson v. Telephone Company, 219 S. W. 655, 281 Mo. 358.]

The petition charged negligence in "stopping" the bus on the pavement, while the undisputed evidence was that the driver did not stop the car but it stopped because the gas line bursted. This is

urged by defendant to be a fatal variance between pleading and proof. We do not consider this variance sufficient for a reversal of the judgment. Moreover, since no affidavit that defendant was misled was filed, as required by section 1272, Revised Statutes 1919, he is in no position to complain. [Detchmendy v. Wells, 253 S. W. 150.]

Plaintiff's instruction No. 2, on the measure of damages, disregarded the specific allegations of negligence contained in the petition and, standing alone, was erroneous. [Menhardt v. Storage Company, 163 Mo. App. 278, 146 S. W. 845.] It starts out, however, with the statement that if the jury "find the issues in this case for plaintiff and find that he sustained personal injuries etc.,—you may assess his damages, etc." Taken in connection with plaintiff's first instruction, we cannot say the jury was misled. [Troxell v. DeShon, 279 S. W. 438.]

It is urged the verdict was excessive. Plaintiff's doctor testified as follows: "By palpation I found a crepitation of the third, fourth, fifth and sixth ribs. When a bone breaks we set out to work to get a sensation. By palpation we can discover the break or fracture of a bone in many instances, and that is what I did in this case. I could feel the fracture in the ribs. He had four ribs fractured on his left side. His left hip was partially wrenched, badly swollen and bruised. His back and left lumbar muscles were injured, the lowest part of the back. This was on the 21st of October last year. I put a plaster on and practically threw his left side out of commission. I did that to make him breathe, as much as I could, on the right side. That was necessary in order that this injury to his left side might heal up. I splinted his left side very thoroughly so as to relieve that side from respiration as much as possible. I thought it was incumbent upon me to relieve that as much as I could. I told him to keep it on there as much as thirty-five days, but I think he kept it on for six or seven weeks. I first saw him and treated him on October 21st of last year. Of course, the treatment was continued along, I suppose, for about six weeks, then he dropped out of my sight. I saw him only once during that time until June 18th of this month. I examined him June 18th to see what condition he was in at that time. I will say that injury to his left hip was permanent; cannot be repaired. That injury is inside the leg, at the head of the femur bone and, in order to get to it, you would have to cut through to the point and that would make a stiff hip, and there is no repair for that. Well, if the *ligature is actually torn into, as I believe it is, the injury is permanent and cannot be repaired.* Those ribs being broken allowed that side to swing in, and, of course, that would possibly interfere with respiration and circulation. The respiration in that lung may not be normal again. That lung was left partially out of condition and it may stay that way, and if it does

it will interfere with respiration and circulation. His heart is out of line to the right. The apex beat of the heart should be right over the nipple, but it is a half to three-quarters of an inch to the right, and the circulation is no longer what we could call perfectly normal. He is a young man and may adjust himself to that condition, but not as good as it was. *I regard his injury to his hip, lung and heart as permanent and he could not perform manual labor the same as he could before he received them.* These conditions would affect his nervous condition, but as to the lighter weight I could not say. If they keep him awake at night, the suffering and pain, this would cause him to decrease in weight. The condition which I have described with reference to his hip, side and heart, I think, will likely continue to cause pain. I think as he grows older it will probably be worse.''

Plaintiff was twenty-five years of age and earning $12 per day as a brick layer and has been unable to work since. According to the doctor, plaintiff is permanently disabled and cannot ever work as before. The damage to the car was clearly shown to be as much as $250. We do not consider $5250 damages excessive. [Godfrey v. Payne, 251 S. W. 133; Ruelter v. Railroad, 261 S. W. 713; Miller v. Fleming, 259 S. W. 139.]

We have carefully considered all the assignments and find no reversible error. The judgment is affirmed.

*Cox, P. J.,* concurs; *Smith, J.,* not sitting.