**Lucie LEEK, Plaintiff,**

v.

**Burtis DILLARD and Wilford Redman, Defendants.**

Nos. 7561, 7562.

Springfield Court of Appeals.

Missouri.

June 25, 1957.

McHaney & McHaney, Kennett, Briney & Welborn, Bloomfield, for plaintiff.

Blanton & Blanton, Sikeston, for defendant Burtis Dillard.

C. A. Powell, Dexter, for defendant Wilford Redman.

STONE, Judge.

While "it was getting dark" on October 14, 1954, Mrs. Lucie Leek, plaintiff herein, was riding as a guest in the rear seat of a 1950 Ford automobile then being driven by Wilford Redman, one of the defendants herein, in an easterly direction on U. S. Highway 60 en route from Dexter to Morehouse, Missouri. As the Redman automobile approached "the Wahite bridge" over a drainage ditch about two miles west of Morehouse, defendant Redman observed an automobile (subsequently identified as a 1951 Chevrolet owned by Burtis Dillard, the other defendant herein) standing on the bridge. For injuries alleged to have been sustained when Redman's emergency application of his brakes "threw me (plaintiff) * * * down between the front seat and back," plaintiff sued both Redman and Dillard. At the close of plaintiff's case, the trial court sustained defendant Dillard's motion for a directed verdict; and, at the close of the entire case, the jury returned a verdict for $3,000 against defendant Redman. We have the case upon the separate appeals (here consolidated) of plaintiff and defendant Redman.

■ Upon *plaintiff's* appeal challenging the directed verdict for defendant Dillard at the close of plaintiff's case, the evidence adduced in plaintiff's case in chief will be viewed in the light most favorable to her and she will be given the benefit of all inferences reasonably deducible therefrom. Bohle v. Sternfels, Mo., 261 S.W.2d 936, 941(3); Hughes v. Aetna Ins. Co., Mo., 261 S.W.2d 942, 945(3). Defendant Redman, east-bound on his right-hand or south side of the two-lane pavement on Highway 60, approached the Wahite bridge at a speed estimated by plaintiff at sixty-five miles per hour. Highway 60 was perfectly straight

and practically level for more than one-half mile west of a small bridge, which was "just before you get to (i. e., just west of) the Wahite bridge." Between the small bridge and the Wahite bridge, there was an upgrade, described by plaintiff as "pretty steep," for east-bound vehicles such as the Redman automobile. "About halfway between those bridges" the Redman automobile passed a truck (hereinafter referred to as the parked truck), headed west but parked on the north shoulder of Highway 60. The headlights on the Redman automobile were burning; and, on the parked truck, there were lights "all the way around the top of the cab" and "the headlights were on dim."

■ We have no doubt but that the triers of the facts might have drawn different inferences from plaintiff's testimony upon trial, particularly in view of the demonstrated inconsistencies between such testimony and her previous deposition. However, she was not bound conclusively by contradictory statements in her deposition;[1] and, viewing her testimony most favorably to sustention of her claim against defendant Dillard, we think that the jury reasonably might have found that the Dillard automobile was discovered by defendant Redman when, as he passed the parked truck, the headlights on his (Redman's) automobile "flashed on" the Dillard automobile, stopped with no lights on it about halfway between the east and west ends of the Wahite bridge, headed "partly southwest," and standing "partly on the left side and partly on the right" side of the bridge, with "most of it" on plaintiff's left side. (There was no center line on the bridge at that time.) Redman immediately "slapped his brakes on"; and, although plaintiff and Redman agreed that, when they first saw the standing Dillard automobile, it "looked

1. Hamilton v. Patton Creamery Co., 359 Mo. 526, 534, 222 S.W.2d 713, 716(2); Merrick v. Bridgeways, Inc., 362 Mo. 476, 483, 241 S.W.2d 1015, 1019(9); Holmes v. Egy, Mo.App., 202 S.W.2d 87, 91(6, 7); Fitzgerald v. Thompson, 238 Mo. App., 546, 553, 184 S.W.2d 198, 201–202 (2). See also Schonlau v. Terminal R. Ass'n of St. Louis, 357 Mo. 1108, 1115, 212 S.W.2d 420, 423; Parmley v. Henks, Mo., 285 S.W.2d 710, 714.

like" there was insufficient space to pass, the Redman automobile, "sliding sideways or skidding"—"kind of slanting," passed on the south side of the Dillard automobile without striking either that automobile or the bridge, and came to a stop near the east end of.the bridge. Plaintiff recognized defendant Dillard as one of the "people standing in front of the car" shortly thereafter.

The Dillard automobile had been theretofore involved in a collision "around 6 o'clock" (hereinafter referred to as the earlier collision), but the record is altogether silent as to the circumstances under which the earlier collision had occurred, as to the nature and extent of injury and damage resulting from the earlier collision, and as to what period of time had elapsed between the earlier collision and the subsequent occurrence involving the Redman automobile. However, since the time of the setting of the sun is a matter of judicial notice [Haley v. Edwards, Mo., 276 S.W.2d 153, 161(12); McGowan v. Wells, 324 Mo. 652, 658, 24 S.W.2d 633, 635(1)], we know that the earlier collision "around 6 o'clock" and the subsequent occurrence involving the Redman automobile happened during the period " '(w)hen lighted lamps are required' " by Section 304.270(9),[2] i. e., "from a half-hour after sunset to a half-hour before sunrise." See also Parsons v. Noel, Mo., 271 S.W.2d 543, 548(6, 7).

The allegations of plaintiff's amended petition, including a charge that defendant Dillard negligently permitted his automobile "to be stopped on said (Wahite) bridge and to block the traffic lanes of said highway, without having any lights burning on said vehicle," were sufficient to invoke the statutory light regulations, although the statutes were not pleaded specifically.[3] The broad and inclusive requirement of Section 304.310 is that "(n)o person shall drive, move, park or *be in custody of* any vehicle * * * on any street or highway during the times when lighted lamps are required unless such vehicle * * * displays lighted lamps and illuminating devices as this chapter required"; and, the plain and unmistakable mandate of Section 304.450 is that "(w)henever a vehicle is parked or *stopped* upon a highway * * * during the times when lighted lamps are required, such vehicle shall be equipped with one or more lamps *which shall exhibit a white light on the traffic side visible from a distance of five hundred feet to the front of such vehicle* and a red light visible from a distance of five hundred feet to the rear * * *." (All emphasis herein is ours.)

Permitting the Dillard automobile to remain at rest without lights on the traveled roadway of Highway 60, at a time when lights were required by Section 304.-270(9), constituted negligence per se.[4] Of course, defendant Dillard might have shown legal justification or excuse for his violation of the statutory light regulations, by adducing (if he could) "proof that an occurrence wholly without his fault made compliance with the statute impossible at the moment complained of and which proper care on his part would not have avoided." Wilson v. Shumate, Mo., 296 S.W.2d 72, 75. See Crites v. Kansas City Public Serv-

---

2. Except as otherwise stated, all statutory references herein are to RSMo 1949, V.A.M.S.

3. Counts v. Thomas, Mo.App., 63 S.W.2d 416, 420 (11). See also Moyer v. Chicago & A. R. Co., Mo., 198 S.W. 839, 841-842(2); Jones v. Chicago, B. & Q. R. Co., 343 Mo. 1104, 125 S.W.2d 5, 12–13 (3, 4); Hutcherson v. Thompson, 343 Mo. 884, 123 S.W.2d 142, 147(7–9).

4. Cotton v. Ship-By-Truck Co., 337 Mo. 270, 85 S.W.2d 80, 85(10); Nickels v. Borgmeyer, Mo.App., 258 S.W.2d 267, 276(2); Roux v. Silver King Oil & Gas Co., Mo.App., 244 S.W.2d 411, 414; Casto v. Railway Express Co., Mo.App., 219 S.W.2d 276, 281(7); Taylor v. Silver King Oil & Gas Co., Mo.App., 203 S.W.2d 147, 154(6); Smith v. Producers Cold Storage Co., Mo.App., 128 S.W.2d 299, 303(2); Ridenhour v. Oklahoma Contracting Co., Mo.App., 45 S.W.2d 108, 110–111(1).

ice Co., Mo., 190 S.W.2d 924, 925(3). However, generalized references to the Dillard automobile as "the wrecked vehicle," interjected without explanation, elaboration or elucidation, did not compel a finding that the headlights on that automobile were out of order as a result of the earlier collision, in the significant absence of any evidence to that effect and in the teeth of defendant Dillard's theory, as suggested in plaintiff's cross-examination, that *one* headlight on the Dillard automobile was burning as Redman approached. And, if such references to "the wrecked vehicle" were construed as establishing that the Dillard automobile could not have been moved under its own power, proof of that fact, standing alone, would not have relieved defendant Dillard of his statutory duty to display lights.[5] It was incumbent upon defendant Dillard to prove legal justification or excuse, if aught he had,[6] for violation of the statutory light regulations; and, to us it is plain that such justification or excuse was not established, as a matter of law, by the mere showing that the Dillard automobile had been involved in the earlier collision and by passing references to "the wrecked vehicle."

However, defendant Dillard here insists that, even if he was negligent, plaintiff cannot recover against him for want of causal connection between such negligence and plaintiff's injury. Donnelly v. Goforth, Mo., 284 S.W.2d 462, 466(9, 10); Krelitz v. Calcaterra, Mo., 33 S.W.2d 909, 911. Causal connection need not be established by direct and positive evidence but may be shown by proof of facts and circumstances from which such connection reasonably may be inferred;[7] and, "(t)he facts and circumstances shown should be reckoned with in the light of ordinary experience and such conclusions as common sense dictates deduced therefrom." Anderson v. Asphalt Distributing Co., Mo., 55 S.W. 2d 688, 693(7), 86 A.L.R. 1033. Our Supreme Court, en banc, has said that "the usual test as to causal connection is whether the facts show that absent the negligent act, the injuries would not have been sustained" [Wood v. St. Louis Public Service Co., 362 Mo. 1103, 246 S.W.2d 807, 811(4); Votrain v. Illinois Terminal R. Co., Mo., 268 S.W. 2d 838, 843(4)], and we read further that, "(g)enerally, it is sufficient to constitute proximate cause that the negligence charged was the efficient cause which set in motion the chain of circumstances leading up to the injury." Floyd v. St. Louis Public Service Co., Mo., 280 S.W.2d 74, 78(8). See also Louisville & N. R. Co. v. Beatrice Foods Co., Mo.App., 250 S.W.2d 825, 828(5).

For a negligent act or omission to constitute a proximate cause of an injury, *some* injury must have been reasonably foreseeable. Dickerson v. St. Louis Public Service Co., Mo. (banc), 286 S.W.2d 820, 824. However, the question is not whether the particular injury under consideration should have been anticipated, but whether, after the occurrence, such injury then appears to have been the reasonable and probable consequence of the negligent act or omission. Boese v. Love, Mo., 300 S.W.2d 453, 459; Feldotto v. St. Louis Public Service Co., Mo.App., 285 S.W.2d 30, 32(5). And, it is immaterial that the precise manner in which plaintiff was in-

5. Herrington v. Hoey, 345 Mo. 1108, 139 S.W.2d 477; Arky v. Kessels, Mo.App., 262 S.W.2d 357; Casto v. Railway Express Co., supra; Weaver v. Stephens, Mo.App., 78 S.W.2d 903, 904(1); Jones v. Missouri Freight Transit Corp., 225 Mo.App. 1076, 40 S.W.2d 465, 472; Powell v. Schofield, 223 Mo.App. 1041, 15 S.W.2d 876, 880.

6. Smith v. Producers Cold Storage Co., supra, 128 S.W.2d loc. cit. 308(13); Blashfield's Cyclopedia of Automobile Law and Practice (Perm.Ed.), Vol. 2A, § 1191, loc. cit. 7. Compare Harris v. Hughes, Mo.App., 266 S.W.2d 763, 770 (11).

7. State ex rel. City of St. Charles v. Haid, 325 Mo. 107 (banc), 28 S.W.2d 97, 102 (6); Taylor v. Silver King Oil & Gas Co., supra, 203 S.W.2d loc. cit. 154(5); Johnessee v. Central States Oil Co., Mo. App., 200 S.W.2d 383, 388(1); Long v. F. W. Woolworth Co., 232 Mo.App. 417, 109 S.W.2d 85, 88(3).

jured was neither foreseen nor foreseeable. Mrazek v. Terminal R. Ass'n of St. Louis, 341 Mo. 1054, 111 S.W.2d 26, 29–30(6, 7); Wilson v. White, Mo.App., 272 S.W.2d 1, 5; Restatement, Torts, § 435, p. 1173.

As defendant Dillard here emphasizes, there actually was sufficient room between his automobile and the south side of the Wahite bridge for the Redman automobile to pass safely. But, want of causal connection between Dillard's negligence and plaintiff's injury was not established conclusively by a showing that the Dillard automobile, *"partly"* on the south side, did not block the *entire* south half of the traveled roadway,[8] nor by the further fact that there was no collision between the Redman and Dillard automobiles.[9] And, if Dillard's negligence was a substantial factor contributing to cause plaintiff's injury, Dillard would not have been absolved from concurrent responsibility therefor, even though defendant Redman might have been negligent also, for Dillard "should reasonably have considered the probability of injury, not only from careful drivers of other vehicles, but from negligent ones [citing cases], unless the act of the other driver was so 'extraordinary' as not to be reasonably foreseeable." Dickerson v. St. Louis Public Service Co., supra, 286 S.W.2d loc. cit. 825.

In the absence of any notice or warning, an east-bound motorist, such as defendant Redman, approaching the Wahite bridge over a long, level, straight stretch of smooth pavement would have had no reason to have anticipated that the traveled roadway on the bridge was obstructed by the Dillard automobile, standing (so plaintiff said) unlighted and "partly" on the south side of the bridge. Haley v. Edwards, supra, 276 S.W.2d loc. cit. 159; Davis v. F. M. Stamper Co., 347 Mo. 761, 148 S.W. 2d 765, 768. With the bridge elevated above the level of the highway and with the Dillard automobile midway between the east and west ends of the bridge, discovery of that automobile (particularly if unlighted) would have been rendered more difficult and perhaps delayed; and, with the Dillard automobile headed "partly southwest" and angling into the south lane of Highway 60, as if poised for a lethal head-on blow against an approaching east-bound vehicle, the instinctive and instantaneous reaction of any very careful and prudent east-bound motorist, upon sighting the Dillard automobile, well might have been to have applied his brakes immediately. We think that the jurors, as men and women of common sense and practical experience reasoning from the evidence and from submitted findings of fact [Snyder v. Jensen, Mo., 281 S.W.2d 802, 814(13)], might have inferred and found that, *if* the Dillard automobile had displayed "a white light on the traffic side visible from a distance of five hundred feet to the front" [Section 304.450], defendant Redman would have been enabled to have discovered *sooner* not only the presence and position of the Dillard automobile but also the fact that it was not moving, and that thereby Redman's *emergency* application of his brakes, which threw plaintiff from her seat, might have been avoided. Whether the negligence of defendant Dillard was a proximate cause of plaintiff's injury was for the jury, and

8. Note the factual situations in Drakesmith v. Ryan, Mo.App., 57 S.W.2d 727, 728–729; Casto v. Railway Express Co., supra, 219 S.W.2d loc. cit. 277–278. Compare Brinkley v. United Biscuit Co. of America, 349 Mo. 1227, 164 S.W.2d 325, 330–331. And, see Segebart v. Gregory, 156 Neb. 261, 55 N.W.2d 678; Id., 160 Neb. 64, 69 N.W.2d 315; Liberty Cash Grocers v. Clements, 193 Ark. 808, 102 S.W.2d 836; Hatch v. Daniels, 96 Vt. 89, 117 A. 105, 22 N.C.C.A. 205; St.
John v. Kepler, 360 Pa. 528, 61 A.2d 875; Breeden v. Cudahy Packing Co., 233 Ala. 369, 171 So. 632.

9. Brooks v. Menaugh, Mo., 284 S.W. 803, 805(7); Champieux v. Miller, Mo., 255 S.W.2d 794; Cox v. Wrinkle, Mo., 267 S.W.2d 648, 654; annotation 21 A.L.R.2d 95, 184–186. See also Smith v. Siercks, Mo., 277 S.W.2d 521; Ridenhour v. Oklahoma Contracting Co., supra, 45 S.W.2d loc. cit. 111–112.

Dillard's motion for a directed verdict should not have been sustained.

■ On *defendant Redman's* appeal, the initial contention is that his motion for a directed verdict should have been sustained, because plaintiff's testimony "constitutes a judicial admission" precluding recovery against Redman. Compare Haddow v. St. Louis Public Service Co., Mo.App., 38 S.W.2d 284, 286. Emphasis is placed upon plaintiff's statements that she could not see the Dillard automobile until the Redman automobile was "even with" the parked truck, that when the lights on the Redman automobile "flashed on" the Dillard automobile Redman suddenly applied his brakes, that it "looked like" the Redman automobile "couldn't get by" the Dillard automobile, that Redman was "trying to keep from hitting" the Dillard automobile and "just barely had room to go through," and that, on the night of the accident, plaintiff had said that "Redman wasn't to blame." Plaintiff's concession, on cross-examination, that she could not see the Dillard automobile until she was "even with" the parked truck must be read and considered in connection with other answers by her indicating that, although she had looked ahead previously, she had been "sitting there, just looking like anyone else" not anticipating imminent danger, and that, *immediately before* her discovery of the Dillard automobile, she had *not* been looking ahead.

Compare Graber v. Wells, Mo.App., 7 S.W. 2d 719, 721(4). And, although properly received in evidence,[10] plaintiff's statement on the night of the accident that "Redman wasn't to blame," being an "extrajudicial admission" or "quasi-admission" as distinguished from a "judicial admission" or "true admission" [Wigmore on Evidence (3rd Ed.), Vol. IV, § 1058, p. 20], was nothing but an item of evidence, and not in any sense final or conclusive.[11] Carefully considering and fairly construing her testimony in its entirety, we cannot say that plaintiff testified *positively and understandingly to basic facts and circumstances* which precluded her recovery against defendant Redman.[12]

■ Plaintiff's submission against Redman was for alleged negligent failure to keep a proper lookout. While operating a motor vehicle on a public highway in this state, *defendant Redman* was under a *continuous* duty to exercise the *highest* degree of care in maintaining a vigilant lookout ahead;[13] and, to satisfy and discharge that duty, he was obligated to look in such observant manner as to enable him to see what one in the exercise of the *highest* degree of care for himself and others could and should have seen under similar circumstances.[14] As a guest in the Redman automobile, *plaintiff's* duty was to exercise *ordinary* care; and, in the absence of visible

10. Nelson v. Tayon, Mo., 265 S.W.2d 409, 416; Grodsky v. Consolidated Bag Co., 324 Mo. 1067, 26 S.W.2d 618, 620–621 (2); Friedman v. United Rys. Co. of St. Louis, 293 Mo. 235, 238 S.W. 1074, 1076 (5).

11. Maltz v. Jackoway-Katz Cap Co., 336 Mo. 1000, 82 S.W.2d 909, 917(20); Vosburg v. Smith, Mo.App., 272 S.W.2d 297, 301–302(8); Graber v. Wells, Mo.App., 7 S.W.2d 719, 721; Ginter v. O'Donoghue, Mo.App., 179 S.W. 732, 735(9); Wigmore on Evidence (3rd Ed.), Vol. IV, § 1059, p. 21. See also Runyan v. Marceline Coal & Mining Co., 186 Mo.App. 707, 172 S.W. 1165, 1167(7); Jennings v. Swift & Co., 130 Mo.App. 391, 110 S.W. 21, 22(3).

12. Smith v. Siercks, supra, 277 S.W.2d loc. cit. 525(1–3); Burris v. Kansas City Public Service Co., Mo.App., 226 S.W.2d 743, 747–748(2–4). Contrast Mollman v. St. Louis Public Service Co., Mo.App., 192 S.W.2d 618, 621–622(4, 5); Thomas v. Aines Farm Dairy, Mo.App., 257 S.W. 2d 228, 233.

13. Faught v. Washam, Mo., 291 S.W.2d 78, 82(4), and cases there cited; Williams v. Ricklemann, Mo., 292 S.W.2d 276, 281(6); Watkins v. West, Mo.App., 297 S.W.2d 568, 571(5).

14. Faught v. Washam, supra, 291 S.W.2d loc. cit. 82(5); Chenoweth v. McBurney, 359 Mo. 890, 224 S.W.2d 114, 118(8). Consult also James v. Berry, Mo.App., 301 S.W.2d 530, 533.

lack of caution on the part of Redman or known imminence of danger, plaintiff had a right to rely upon Redman [Fann v. Farmer, Mo.App., 289 S.W.2d 144, 147–148 (2–5), and cases there collected] and was not required to maintain a constant lookout. Ketcham v. Thomas, Mo., 283 S.W.2d 642, 645(1); Taylor v. Taylor, 360 Mo. 994, 232 S.W.2d 382, 385(4). So, whether Redman's conduct was in keeping with the standard of care imposed upon him could not be determined conclusively on the basis of whether or when plaintiff, a guest in the Redman automobile, saw the Dillard automobile.

■ Defendant Redman testified that, traveling at fifty to fifty-five miles per hour, "I had already passed the (parked) truck when I noticed the (Dillard) car"—"I would say right after I passed it." He "wasn't exactly at the (Wahite) bridge" but he "just couldn't say how far" west of the bridge he was when he first saw the Dillard automobile. Plaintiff's evidence *in rebuttal* developed that the Wahite bridge was "85 steps" or "approximately 250 feet" in length, and that it was about "42 steps" from the Dillard automobile to the west end of the bridge. Since defendant Redman said that his headlights were burning and "were good," we assume that they complied with the requirements of Sections 304.320 and 304.350 [now amended Laws of 1955, p. 626]. Peterson v. Tiona, Mo., 292 S.W.2d 581, 583. Furthermore, Redman volunteered that, although his headlights "possibly could have been" shining on the Dillard automobile when he discovered it, "it wasn't too dark at that particular time that you could have seen it without lights shining on it"— "well, at some distance, yes." And, when asked pointedly whether he could have seen "anything on the highway past the (parked) truck before you (Redman) got even with

it," the equivocal and enigmatic answer was "well, I never particularly noticed anything past the truck." Having in mind that the absence of lights on the Dillard automobile was but one of the evidentiary facts bearing upon the time when, and the place where, defendant Redman in the exercise of the highest degree of care could and should have discovered that automobile [Faught v. Washam, Mo., 291 S.W.2d 78, 82], we are satisfied that, on the record before us, whether Redman was negligent in failing to maintain a vigilant lookout ahead and, if so, whether such negligence was a proximate cause of plaintiff's injury were questions for the jury.

■ However, for refusal to instruct the jury on the law of emergency, the judgment against defendant Redman cannot stand. The so-called emergency doctrine is not a defense, under which a motorist is exonerated simply by reason of the existence of an emergency. Rohde v. St. Louis Public Service Co., Mo., 249 S. W.2d 417, 420(1). But, it is a principle in the law of negligence recognizing that, where a motorist is confronted with a sudden emergency, not created in whole or in part by his own negligence, he should not be held to the same accuracy of judgment as would be required if he had time for calm deliberation and that, if he exercises such care as a very careful and prudent person would have exercised under the same circumstances, he should not be convicted for an error in judgment or miscalculation as to space, even though it might appear subsequently that a wiser and safer course could have been pursued.[15] In the instant case, it is readily demonstrable, in retrospect, that Redman's emergency application of brakes was unnecessary, for the Redman automobile passed safely between the Dillard automobile and the bridge railing.

15. Consult Mayne v. May Stern Furniture Co., Mo.App., 21 S.W.2d 211, 213 (3, 4); McCallum v. Executive Aircraft Co., Mo.App., 291 S.W.2d 650, 654(2); Lucas v. Barr, Mo.App., 297 S.W.2d 583, 586(4); 5 Am.Jur., Automobiles, § 171, p. 600; 60 C.J.S. Motor Vehicles § 257a, p. 624; Blashfield Cyclopedia of Automobile Law and Practice (Perm.Ed.), Vol. 1 (Part 2), § 668, p. 538; Id., § 670, p. 553; annotation 111 A.L.R. 1019.

However, the situation confronting Redman upon discovery of the Dillard automobile afforded no opportunity for close inspection, calm deliberation or thoughtful balancing of possible expedients. When unraveled in the illuminating glare of hindsight, Redman's problem may become delusively simple and deceptively easy of solution; but, the record indicates that, when the Dillard automobile was sighted, plaintiff herself thought that Redman faced an "emergency," i. e., "an unforeseen combination of circumstances which calls for immediate action." Webster's New International Dictionary (2d Ed. Unabridged), p. 837; Lukitsch v. St. Louis Public Service Co., 362 Mo. 1071, 1080, 246 S.W.2d 749, 754. As plaintiff points out, the emergency doctrine may not be asserted if the negligence of the one seeking to invoke the doctrine contributes to creation of the emergency [Boatright v. Bruening, 363 Mo. 494, 251 S.W.2d 709, 711(1)]; but, in our view of the evidence, we may not, as a matter of law, either exonerate defendant Redman from, or convict him of, negligence. Upon trial, he was entitled to a proper instruction (if offered by him) on the law of emergency.[16]

It is true that, before permitting consideration of an emergency, an instruction must require a finding, in substance and effect, that defendant's negligence did not cause or contribute to cause the emergency;[17] but, the "freedom [of the defendant] from any negligence in bringing about the emergency may be hypothesized generally." Rohde v. St. Louis Public Service Co., supra, 249 S.W.2d loc. cit. 421; Jones v. Hughey, Mo., 283 S.W.2d 550, 553. Since instruction 5-D, offered by defendant Redman and refused by the trial court, followed in all material particulars (with appropriate adaptation to the facts of the instant case) instruction A approved in Filkins v. Snavely, 359 Mo. 356, 360, 221 S.W. 2d 736, 737 [see also Raymond's Missouri Instructions, Vol. 1, § 1246], instruction 5-D was in acceptable form and, no other instruction on the law of emergency having been given, its refusal was prejudicial and reversible error.

Having so concluded, it becomes unnecessary to consider other errors assigned by defendant Redman, including substantial objections to the form of plaintiff's instruction 1-P, which will, no doubt, be obviated upon retrial. The judgment of the trial court is set aside and the cause is remanded for retrial against both defendants.

McDOWELL, P. J., and RUARK, J., concur.

16. Filkins v. Snavely, 359 Mo. 356, 221 S.W.2d 736; Burlingame v. Landis, 362 Mo. 523, 529, 242 S.W.2d 578, 582; Shelley v. St. Louis Public Service Co., Mo. App., 279 S.W.2d 182, 185.
17. Rohde v. St. Louis Public Service Co., Mo., 249 S.W.2d 417, 420–421; McDonnell v. St. Louis Public Service Co., Mo., 249 S.W.2d 412; Grace v. St. Louis Public Service Co., Mo., 249 S.W.2d 409; Nix v. St. Louis Public Service Co., Mo. App., 228 S.W.2d 369, 373–374.