**Lawrence Everett ROBB, Plaintiff-Appellant,**

v.

**Vonda Lou WALLACE and Cecil Wright, Defendants-Respondents.**

No. 49705.

Supreme Court of Missouri,

Division No. 2.

Sept. 9, 1963.

Motion for Rehearing or for Transfer to Court En Banc Denied Oct. 14, 1963.

Moore, Pettit & Steinle, J. Hal Moore, Walter S. Pettit, Jr., Jack P. Steinle, Aurora, for appellant.

Ransom A. Ellis, Jr., William A. R. Dalton, Walker, Daniel, Clampett, Rittershouse & Ellis, Springfield, for respondent Wallace.

Karl W. Blanchard, Seiler, Blanchard & Van Fleet, Joplin, for respondent Wright.

BARRETT, Commissioner.

Lawrence E. Robb instituted this action against Vonda Lou Wallace and Cecil Wright to recover $20,000 damages for personal injuries and $1,500 for injury to his automobile. Both defendants responded to the suit with answers in which they pleaded

contributory negligence and Mrs. Wallace filed a counterclaim. At the close of the plaintiff Robb's evidence the court directed verdicts in favor of both defendants on the ground that Robb was guilty of contributory negligence as a matter of law and a jury returned a verdict in favor of Mrs. Wallace on her counterclaim in the sum of $10,000. Robb has appealed from the ensuing judgment and urges that the court erred in directing verdicts, while the respondents contend that as a matter of law he was guilty of contributory negligence. And the respondent Wright contends that as to him Robb adduced no substantial evidence from which a jury could find negligence on his part. It is also urged that Robb did not make a submissible case of humanitarian negligence against the respondent Wallace, but if there was evidence to support findings of primary negligence against both respondents it is immaterial to this appeal whether he made a submissible humanitarian case against Mrs. Wallace. Meyer v. Beck, (Mo.App.) 368 S.W.2d 905.

Briefly, these are the circumstances with which this appeal is concerned: About 5:45 on November 15, 1958, the plaintiff Robb was driving his 1955 Ford automobile east on U. S. Highway 166 near the Chesapeake community in Lawrence County. Robb testified that it was dark at the time, Mrs. Wallace said that it was light enough that her husband had just finished reading a newspaper. A World Almanac stated that on November 15 the sun set at "5:02 or earlier." In any event, Robb was traveling east on his way to his home in Marshfield at a speed of 50 to 60 miles an hour, and unknown to him Mrs. Wallace was also driving east ahead of him on the highway in a 1949 two-door Pontiac sedan intending to turn left across the highway onto a gravel road north into Chesapeake. Her automobile was not equipped with mechanical "turn lights" and of necessity if she gave traffic signals it had to be by extended hand and arm. The gravel road into Chesapeake is immediately west of a bridge and for the distance of about 500 feet west

Highway 166 is straight. Robb says that "as I rounded this curve coming into the bridge, just over as I straightened out from the curve there was a car (Wright's traveling west) came off over the little rise east of the bridge, and I dimmed my lights, blinked my lights twice and these lights were coming on and blinding me some way; and as I got on up closer when he passed, all I could see was the reflections of this Wallace car taillights." As to the lights from Wright's westbound automobile Robb said, "They blinded me so as I didn't see this car in front of me until he got past me." At another point he testified that after he was blinded by the lights of Wright's automobile he reduced his speed to 35 or 40 miles an hour, and in describing what he could and could not see said, "I couldn't see anything beyond. I could still see my right lane, roadway, that I couldn't see anything till this oncoming car's bright lights passed." As to his being blinded by the oncoming lights for the distance of 500 feet west of the bridge he said "It is approximately just a guess, I would judge I was back about that far." He said that he was not completely blinded, "not to the extent but what I could see the right side of my road, I mean stay in my line until the car went around me." At another point in his examination he testified that after he was blinded by the lights of Wright's automobile he reduced his speed to 35 or 40 miles an hour, and in describing what he could and could not see said, "I couldn't see anything beyond. I could still see my right lane, roadway, that I couldn't see anything till this oncoming car's bright lights passed." Robb said that he was about 100 feet west of the bridge when Wright passed with his blinding lights and for the first time, about 80 feet ahead on the highway, he saw Mrs. Wallace's 1949 Pontiac.

When he first saw the Pontiac he "didn't know whether it was stalled or whether it was moving very slowly," not over 5 miles an hour, and he testified that there were no lighted taillights on the Pontiac. He said that he was close enough to Mrs. Wallace's

Pontiac that he "pulled to the left to avoid hitting her in the back." But after he was in the north traffic lane Mrs. Wallace "gradually pulled into my car" and his Ford went off the pavement into a creek bank on the north side of the highway and the Pontiac crashed into the bridge abutment on the right side. In describing the collision Robb said that he was "halfway around" the Pontiac when Mrs. Wallace suddenly and without warning turned left "on an angle across the centerline" into the right rear of his automobile. Mrs. Wallace says that she was wearing a large-sleeved white coat and that she signalled a left turn with her arm straight out "until the moment I started to turn; I took my arm back in and took hold of the wheel." She says that her front wheels were near the centerline but she was in the south half of the pavement, because she had not started the turn, when Robb ran into and "hit the rear part of our car." Incidentally, photographs reveal that all the collision damage to Robb's Ford is at the right rear door and fender and the damage to the Pontiac is all in the area of the left rear fender. Robb testified that he was not aware of the gravel road to the north and that the collision did not occur in its intersection with the highway but was about 20 feet from the "west edge of the crossroad." And a highway patrolman, who received a call at 5:55 and arrived at the scene at 6:15, said that the debris from the collision was "near the west edge of the dirt road going north." There were many other detailed facts and circumstances, some favorable and some unfavorable to the plaintiff, and there were several sharp conflicts in the evidence adduced by Robb and by Mrs. Wallace but the recited evidence, generally favorable to the plaintiff's claims, is deemed sufficient for the purposes of this opinion and the disposition of this appeal.

 Nor is it deemed necessary other than this mere recitation of the facts to further demonstrate that in these circumstances a jury could reasonably find both Wright and Mrs. Wallace guilty of one or more acts of primary negligence. As to the respondent Wright it is sufficient to say that one of the elemental hazards of nighttime driving is "the blinding effect produced by the headlights of approaching vehicles." 22 A.L.R.2d 427, 429, annotating Judge Vandeventer's opinion in Lemonds v. Holmes, (Mo.App.) 236 S.W.2d 56, 22 A.L. R.2d 418. It is pointed out in that annotation that there is a primary duty to dim or deflect dazzling headlights (7 Am.Jur.2d, Automobiles, Sec. 226, p. 776) and that upon conflicting evidence as to whether headlights have in fact been dimmed "whether such failure is a proximate cause of the collision has generally been held to present a question for the trier of fact." 22 A.L.R.2d 1. c. 430, and see Browne v. Creek, 357 Mo. 576, 582–583, 209 S.W.2d 900, 904. Likewise as to the evidence and the record with respect to the conduct of Mrs. Wallace, "Certainly the defendant had violated the rules of the road and was negligent in operating the pickup without lights and turning it to the left and across the highway without signalling. * * * Whether, if plaintiff's driver had sounded his horn, the warning would have been heard by the defendant; and whether the pickup was then in a position on the highway that the defendant could change the course thereof in time to avoid the collision, are such facts, in our opinion, as to require the submission of the issue of proximate cause to the jury." Hill v. Torrey, (Mo. App.) 320 S.W.2d 594, 597, a case cited by the respondent Wright. See also in this connection 21 A.L.R.2d 7, 44; Hamilton v. Patton Creamery Co., 359 Mo. 526, 222 S.W.2d 713; Highfill v. Brown, (Mo.) 320 S.W.2d 493, and Nickels v. Borgmeyer, (Mo.App.) 258 S.W.2d 267, 276.

Both respondents contend, however, that Robb was guilty of contributory negligence as a matter of law and that therefore the court properly directed verdicts against him. It is difficult to understand just how the respondent Wright is personally concerned with some of these claims but he urges that Robb was guilty of contributory

negligence as a matter of law in that (1) in violation of the statute, V.A.M.S. Sec. 304.-016, subd. 1(1), he failed to sound his horn in attempting to pass Mrs. Wallace's Pontiac, and (2) because he did not have his automobile "under such control as to be able to stop within the assured clear distance ahead." Somewhat in this connection the respondent Wallace says that Robb admittedly drove the distance of 368.5 feet while blinded and was therefore contributorily negligent as a matter of law. And then both respondents urge that he was guilty of contributory negligence as a matter of law in that in violation of the statute, V.A.M.S. Sec. 304.016, subd. 4(2) he turned into the left lane of traffic and attempted to pass Mrs. Wallace when his own automobile was less than 100 feet from the intersecting gravel road.

■ Bearing on one or more of these questions and contrary to the respondents' claim, is the fact that in these circumstances, from Robb's viewpoint, a jury could reasonably find that he was suddenly confronted with an emergency situation, one not caused or contributed to by his negligent conduct. Of course sudden emergency is not a defense and does not exculpate, but it is a factor to be considered in passing on Robb's conduct and whether in the immediate circumstances he was guilty of contributory negligence. Rohde v. St. Louis Public Service Co., (Mo.) 249 S.W.2d 417, 420. Particularly in these circumstances, whether he could have effectively sounded his horn was a matter for the jury's determination. Myers v. Karchmer, (Mo.) 313 S.W.2d 697. As the court said of failure to sound the horn in Hill v. Torrey, 320 S.W.2d 1. c. 596, "But these cases and many others hold that the mere violation of a traffic statute does not, in itself, require a finding of negligence as a matter of law."

■ It was not a conclusively established fact that Robb traveled 368.5 feet "blinded" (for a definition see Powell v. Schofield, 223 Mo.App. 1041, 1047, 15 S.W.2d 876, 878), all the speeds and distances were estimates, a "guess" Robb once said, and "A party is not conclusively bound by his estimates of time, speed or distance." Highfill v. Brown, (Mo.) 340 S.W.2d 656 1. c. 663. In any event there is a summary of the subject of driving blinded, together with a list of Missouri cases, in 22 A.L.R.2d 1. c. 310: "Finding the rule requiring a driver blinded by lights to stop or proceed at his peril impracticable under modern traffic conditions, a number of courts have repudiated or refused to adopt it, applying instead the more flexible standard of ordinary care under the circumstances, (the highest degree of care in Missouri) and holding that a motorist who continues on his course when his vision is interfered with by other lights cannot be held guilty of negligence as a matter of law." One of the cases cited by a respondent, Trantham v. Gillioz, (Mo.App.) 348 S.W.2d 737, rather plainly pointed out that this jurisdiction has not wholly accepted the stopping "within the assured clear distance" rule. On the contrary, "one is not necessarily contributorily negligent as a matter of law solely because he drives at a speed which prevents his stopping within the distance his headlights reveal objects ahead of him; and that whether he is contributorily negligent as a matter of law depends upon all the circumstances in a particular case." Johnson v. Lee Way Motor Freight, (Mo.) 261 S.W. 2d 95, 98. In short, here as in the Johnson case, whether Robb was guilty of contributory negligence in proceeding in the face of dazzling lights was for the jury. Certainly in these circumstances his contributory negligence should not have been declared as a matter of law. Snyder v. Murray, 223 Mo.App. 671, 676, 17 S.W.2d 639, 642; Powell v. Schofield, supra; 8 Am.Jur. 2d, Automobiles, Secs. 724–725, pp. 276–279.

■ The remaining claim is that Robb was contributorily negligent as a matter of law because in violation of the statute, Sec. 304.016, he was attempting to pass Mrs. Wallace within 100 feet of the intersecting gravel road. In large measure the

argument is based upon his supposed "constructive knowledge" of the road. He testified that on the occasion of the collision he was not aware of the existence of the road or of the fact that he was approaching it. But, since he had visited in Mt. Vernon on several occasions he had of course in traveling Highway 166 passed the intersecting gravel road at least "a dozen" times. It is not necessary to consider in these circumstances the subject of "constructive knowledge," it is sufficient to say that the circumstances are certainly not comparable to Purdy v. Moore (Mo. App.) 224 S.W.2d 838, in which the facts are set forth in this language: "Plaintiff seeks to excuse himself on two grounds, first, *that although he was familiar with Highway M and this was his sixth round trip over it that day,* he did not know that the crossroad he was approaching extended south of Highway M * * *." (Emphasis supplied.) It is not necessary here to further distinguish this and other cases or to illustrate upon the circumstances, it may be summarily said "that the passing of another vehicle at an intersection is not contributory negligence as a matter of law under any and all circumstances." Kraft v. Armentrout, (Mo.App.) 275 S.W.2d 402, 404; McCauley v. Stone, (Mo.App.) 315 S.W.2d 476; Cockrill v. Buchanan, (Mo. App.) 259 S.W.2d 696; Hamilton v. Patton Creamery Co., supra. Or, sufficient for the purposes of this case is this excerpt from another annotation, "a mere showing that an applicable regulation prohibiting intersectional passing was violated did not prevent the trier of the fact from finding against the existence of negligence or contributory negligence." Annotation 53 A.L. R.2d 850, 855, subject, "Construction, applicability, and effect of traffic regulation prohibiting vehicles from passing one another at street or highway intersection."

As indicated, construing the evidence favorably to the plaintiff Robb, there was a submissible case on one or more grounds of primary negligence against both defendants Wallace and Wright and upon the reasons urged here he was not guilty of contributory negligence as a matter of law. Accordingly the judgments against Robb on his causes of action against both respondents are reversed and the judgment in favor of Mrs. Wallace on her counterclaim is reversed and the cause is remanded.

STOCKARD, C., concurs.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.